512 S.E.2d 534

**Melanie J. GILFILLIN, Respondent,**

v.

**James M. GILFILLIN, Appellant.**

**No. 2936.**

Court of Appeals of South Carolina.

Heard Nov. 4, 1998.
Decided Feb. 3, 1999.

David H. Wilkins and Timothy E. Madden, both of Wilkins & Madden, of Greenville, for appellant.

Gwendolynn W. Barrett, of Greenville, for respondent.

Symmes W. Culbertson, of Greenville, for Guardian Ad Litem.

**PER CURIAM:**

In this divorce action, James M. Gilfillin, the husband, appeals a family court order directing him to establish a trust to secure alimony payments to Melanie Gilfillin, the wife. We affirm as modified.

## FACTS

The parties were married for fourteen and a half years before they separated. They have one son, who was fifteen at the time of the divorce hearing. The wife has a bachelor's degree and eighteen hours of post-graduate work. She had once been certified to teach public school through the elementary level; however, her certification had lapsed at the time of the hearing. She taught school until their son was born. The wife did not work outside the home except for sporadic, limited part-time work from their son's birth until he was eleven or twelve. After that time, she substituted in public and private schools. At the time of the hearing she was 46 years old.

The husband has a bachelor's degree and worked at his family insurance business during the entire marriage. At the time of the hearing, he was taking steps to retire from the business. He inherited a substantial stock portfolio from several relatives during the two years before the separation. The value of his portfolio was between $4.8 million and $4.9 million. He was 58 years old at the time of the hearing.

During the marriage, the wife was hospitalized six times for problems relating to mental illness. She is diagnosed with schizoaffective disorder. Although she is supposed to take medication to control her illness, she stopped taking the medication after the hearing and subsequently had to be hospitalized.[1]

On January 7, 1994, the wife arranged to have the locks on the marital residence changed. When the husband returned home, he found a note from the wife stating, "On the advice of my psychiatrist we are to stay away from each other. I have moved most of your clothes from the bedroom and your toiletries over to 12 Ashley Avenue. My attorney has a call into your attorney." The wife then filed an action for separate maintenance and support.

The parties reached a settlement of the equitable distribution of the marital estate. Under this settlement, the wife received marital assets with a total value of $121,395, including

---

1. The wife initially received custody of the child; however, custody was changed to the husband after the wife was hospitalized.

the marital residence. The husband received $28,678 in marital assets. Both parties retained their respective nonmarital assets.

The family court granted the husband a divorce on the ground of desertion. The family court ordered the husband to pay $3,200 a month in periodic alimony, but denied the wife's request for lump sum alimony. In addition, the family court required the husband to establish a trust with $300,000 in cash or liquid securities to provide the wife with security for payment of alimony in the event he predeceased her. The husband is to be the income beneficiary of the trust during his lifetime. After his death, the wife will be entitled to the interest and dividends and may invade the corpus of the trust as necessary to receive income from the trust in an amount equal to the periodic alimony payments. Upon the wife's death, the corpus of the trust is to pass to the beneficiary designated by the husband.

## DISCUSSION

1. Statutory authority for an alimony trust

█  The husband first asserts the creation of the alimony trust is beyond the scope of statutory authority. We disagree.

In requiring the husband to establish the alimony trust, the family court cited the following statute:

In making an award of alimony or separate maintenance and support, the court may make provision for security for the payment of the support including, *but not limited to,* requiring the posting of money, property, and bonds and may require a spouse, with due consideration of the cost of premiums, insurance plans carried by the parties during marriage, insurability of the payor spouse, the probable economic condition of the supported spouse upon the death of the payor spouse, and any other factors the court may deem relevant, to carry and maintain life insurance *so as to assure support of a spouse beyond the death of the payor spouse.*

S.C.Code Ann. § 20–3–130(D) (Supp.1997) (emphasis added).

The provisions listed are examples of methods for the family court to provide security for payment of support; the legisla-

ture expressly stated the family court's authority to make such a provision is not limited to the ones mentioned. Although the legislature did not specifically mention a trust, we find the alimony trust is among the types of provisions the legislature intended the family court to use as security for the payment of support.[2] *See* S.C.Code Ann. § 20-3-130(B)(6) (Supp.1997) (authorizing the family court to grant "such other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances....").

■ The family court found that "[t]he alternative of the purchase of life insurance is too expensive due to the Husband's age" and, based primarily on that finding, determined that the appropriate method to provide security would be through the creation of the trust. Without any other findings of fact by the family court on the feasibility of life insurance,[3] we modify the appealed order to give the husband the option of funding the trust through the purchase and maintenance of a life insurance policy with a face value of $300,000, the proceeds of which are to be payable to his estate and directed to the creation of the alimony trust under the terms set by the

---

2. In his reply brief the husband argues section 20-3-130(D) is drafted in such a way to reflect an intent by the legislature to give the family court the authority to provide security for alimony awards in two distinct situations: (1) situations in which the payor spouse is living but there is reason to believe the recipient spouse will experience difficulty in collecting the alimony award, and (2) situations in which the recipient spouse is entitled to support after the death of the payor spouse. The husband argues the division of this section into two separate clauses indicates the legislature intended to restrict the use of security provisions besides life insurance to the first situation and, likewise, to allow the use of no other mechanism.other than life insurance to ensure support to the recipient spouse who has survived the payor spouse. Section 20-3-120(D), however, does not expressly limit the application of security provisions other than life insurance to situations in which the payor spouse is still living. In our view, then, the phrasing of section 20-3-120(D) reflects (1) the recognition by the legislature that the recipient spouse could not collect on a life insurance policy as long as the payor spouse is living and would therefore derive no practical benefit from such a requirement and (2) an intent that the family court have authority to provide for life insurance, in addition to the other means of providing for security during the life of the payor spouse, to protect the recipient spouse in the event the payor spouse dies first.

3. Indeed, the husband maintains he is in good health and hopes to live beyond his statutory life expectancy of 76.99 years.

appealed order in the event he predeceases the wife. If the husband decides to avail himself of this option instead of funding the trust with cash or liquid securities, he is required to provide the wife on a continuing basis appropriate proof of insurance.

2. Family court jurisdiction over funds to establish an alimony trust

■ The husband next asserts the family court did not have jurisdiction over the assets needed to fund the alimony trust. We disagree.

■ The husband contends the family court essentially ordered him to transfer specific personal property directly to the wife. The supreme court has held alimony is restricted to payment in money and, thus, family courts do not have authority to award specific property as alimony. *Smith v. Smith*, 264 S.C. 624, 216 S.E.2d 541 (1975). The family court, however, may specify a property transfer as an alternate method of satisfying an alimony payment. *McCullough v. McCullough*, 271 S.C. 475, 248 S.E.2d 308 (1978).

The family court ordered the husband to fund the trust with $300,000 in cash or liquid securities from his portfolio; therefore, the husband did not have to use his inheritance to comply with this directive. We, therefore, find no merit to the husband's contention he was ordered to transfer specific property as alimony.

■ The husband also argues the family court does not have jurisdiction over nonmarital property in making an award of alimony. He asserts section 20–3–130(D) must be read *in pari materia* with S.C.Code Ann. §§ 20–7–471 through 20–7–479 (Supp.1997), which cover equitable distribution. Under these sections, the family court does not have jurisdiction or authority to apportion nonmarital property. S.C.Code Ann. § 20–7–473 (Supp.1997).

The legislature, however, did not restrict the family court to awarding alimony solely from marital assets. Several statutes indicate the legislature intended that the payor spouse use nonmarital assets to make alimony payments. For example, the family court, in making an award of alimony, must consider both the marital and nonmarital properties of the parties.

S.C.Code Ann. § 20–3–130(C)(8) (Supp.1997). If nonmarital assets are to be considered in the payor spouse's ability to pay alimony, it follows the nonmarital assets would be used to make the payments. In addition, ex-spouses may seek modifications in the amount of alimony based on a change in circumstances of either spouse. S.C.Code Ann. § 20–3–170 (1985). Furthermore, although income earned after the issuance of a support order is legally nonmarital property, it can be withheld to secure support payments. S.C.Code Ann. §§ 20–7–473(2) and 20–7–1315 (Supp.1997).

■ The payment of alimony, in addition, is not limited to current earnings. *McMurtrey v. McMurtrey,* 272 S.C. 118, 249 S.E.2d 503 (1978). In *McMurtrey,* the supreme court found a farm and house the husband owned were sufficient financial resources from which he could generate funds to make support payments to the wife. The farm and house apparently were nonmarital assets.

The family court, then, is not limited to awarding support payments solely from marital assets. We find the husband's assertions that the family court lacked jurisdiction to fund the trust without merit.

3. *Payment of alimony after the payor spouse's death*

■ The husband argues any mechanism providing for alimony after the payor spouse's death is inconsistent with the intent and purposes of alimony. We disagree.

The alimony statute provides for periodic alimony "to be paid but terminating on the remarriage of the supported spouse or upon the death of either spouse *(except as secured in subsection (D))*." S.C.Code Ann. § 20–3–130(B)(1) (Supp. 1997) (emphasis added). Section § 20–3–130(D) (Supp.1997) authorizes the family court to make provisions for security of payment of support "so as to secure support of a spouse beyond the death of the payor spouse." [4] Clearly the legislature authorized the family court to provide a method of continuing support after the payor spouse's death.

---

4. Before 1990, the family court could not order the payor spouse to maintain life insurance to secure periodic alimony payments in the absence of special circumstances or specific statutory authority. *Ferguson v. Ferguson,* 300 S.C. 1, 386 S.E.2d 267 (Ct.App.1989); *Hickman v.*

▮ The husband further argues the provision of alimony after the payor spouse's death conflicts with S.C.Code Ann. § 62-2-201(a) (1987 and Supp.1997), the elective share provision of the Probate Code. The husband did not raise this argument to the family court either at trial or his motion for reconsideration; therefore, it is not preserved for our review. *See McGee v. Bruce Hosp. Sys.,* 321 S.C. 340, 468 S.E.2d 633 (1996) (holding an argument raised for the first time on appeal is not preserved for appellate review).

4. Exceptional circumstances

▮ The husband asserts the family court failed to identify any exceptional circumstances warranting the creation of an alimony trust. We disagree.

The family court identified several factors to support its decision to order the husband to create a trust to secure the wife's alimony after his death. We find several of these factors are compelling circumstances that would warrant continuation of spousal support in the event the husband predeceased the wife. First, when considering the twelve-year age difference between the parties and the longer life expectancy accorded to the wife by S.C.Code Ann. § 19-1-150 (1985), it is reasonably foreseeable that the wife would survive the husband by more than fourteen years. In addition, the wife's history of emotional problems, which have resulted in significant medical expenses and her inability to maintain gainful employment, supports the family court's finding that cessation of alimony payments due to the husband's death would leave her destitute. Given these facts, we hold the family court acted within its discretion in determining there were special circumstances that would support the deviation from the normal rule that alimony payments would cease upon the death of either party. *Cf. Bannen v. Bannen,* 286 S.C. 24, 331 S.E.2d 379 (Ct.App.1985) (stating questions regarding alimony rest within the sound discretion of the family court).

5. Consideration of marital fault

▮ The husband argues the family court failed to give proper weight to the wife's desertion. We disagree.

*Hickman,* 294 S.C. 486, 366 S.E.2d 21 (Ct.App.1988); *Hardin v. Hardin,* 294 S.C. 402, 365 S.E.2d 34 (Ct.App.1987).

The decision to grant or deny alimony is within the sound discretion of the family court. *Williamson v. Williamson*, 311 S.C. 47, 426 S.E.2d 758 (1993). Marital fault is only one of the factors the family court must consider in making an award of alimony. S.C.Code Ann. § 20–3–130(C) (Supp.1997). Although the family court must consider all relevant factors, it must "give weight in such proportion as it finds appropriate" to these factors. *Id.*

Here, the family court recognized marital fault was relevant to the issue of spousal support. It explained, "Wife's desertion of Husband should be taken into account, but should not severely penalize Wife in her claim for alimony particularly in light of her mental condition, her need to avoid stress and the stress the marital relationship was placing on her." In determining the husband should pay periodic alimony of $3,200 per month, the family court noted the award "recognizes that it was her determination to end the marriage which brought about this litigation."

We find the family court considered the wife's fault in the breakup of the marriage, in addition to the other statutory factors. The family court, therefore, did not abuse its discretion in ordering the husband to establish the alimony trust.

**AFFIRMED AS MODIFIED.**

GOOLSBY, HUFF and HOWARD, JJ., concur.