725 A.2d 32 (1999)
319 N.J. Super. 138
Mary E. McCARTHY, Plaintiff-Respondent/Cross-Appellant,
v.
John B. McCARTHY, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1999.
Decided March 5, 1999.
*33 Donna L. Maul, for defendant-appellant-cross-respondent (Ansell, Zaro, Grimm & Aaron, attorneys; Ms. Maul, of counsel and on the brief; Kristine M. Bergman, Ocean, on the brief).
Joseph F. Defino, Oakhurst, for plaintiff-respondent-cross-appellant (Jacobowitz, Grabelle, Defino, McGoughran & Latimer, attorneys; Mr. Defino, on the brief).
Before Judges PRESSLER, KLEINER and STEINBERG.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This appeal represents the final chapter in an eight-year long post-judgment proceeding in which defendant John B. McCarthy has been attempting to obtain relief from the alimony and counsel fee orders attendant upon his divorce from plaintiff Mary E. McCarthy in 1988. Before us now is the trial court's order respecting the amount of counsel fees owed by defendant to plaintiff and its imposition of a "constructive trust" upon real estate owned by defendant's second wife, Julie A. McCarthy, to secure payment by defendant of the counsel fee award and stipulated arrearages. We affirm that portion of the order confirming the assessment of counsel fees in the amount of $16,623.05, payable in four equal annual installments, together with six percent interest on the unpaid balance, commencing June 26, 1998.[1] We reverse, however, the imposition of the trust. We also affirm, on plaintiff's cross appeal, that *34 portion of the order denying her application for additional counsel fees for post-judgment representation.
This is the second time this post-judgment matter has been before us. On April 12, 1996, we filed our opinion in McCarthy v. McCarthy, under docket numbers A-4197-93T2 and A-3281-94T2, remanding to the trial court for reconsideration of the retroactive date of defendant's entitlement to a reduction in alimony and of the $16,623.05 counsel fee assessed against him as well as plaintiff's demand for reimbursement of the capital gains tax she was required to pay on the sale of the marital residence, whose proceeds were divided equally between the parties. As we had explained in that opinion, defendant, then an executive in the textile industry, had lost his high paying job in 1991, and although he became quickly reemployed in that industry, his new employer went out of business shortly thereafter. He was not able to find suitable employment at a reasonably commensurate salary. He had also remarried prior to 1991. His second wife is an interior designer and they apparently formed a business venture, McCarthy Associates. The second Mrs. McCarthy also maintained a separate business, Julie A. McCarthy ASID. It was defendant's allegation that his income, after losing his position in the textile industry, was considerably less than half of what it had been at the time of the divorce, making it impossible for him to meet the original $2,500 alimony payment to plaintiff.
Deciding the matter on the papers and without an evidential hearing, the trial judge, in 1994, found that defendant had the ability to pay the original alimony and was $66,006.56 in arrearages. He also fixed the approximately $16,000 counsel fee and concluded that plaintiff was not entitled to reimbursement for her capital gains tax. The order entered also froze the bank accounts of both McCarthy Associates and Julie A. McCarthy ASID and appointed a special fiscal agent for those businesses. Defendant appealed and plaintiff cross appealed. While the appeal was pending and on defendant's motion, the trial judge conducted an ability to pay hearing. As a result thereof, he found that defendant had no interest in Julie A. McCarthy ASID, which was an entirely distinct entity. He found, however, that defendant had an annual imputed income from McCarthy Associates of $40,000, which he thereafter adjusted to $32,000. By order dated March 22, 1995, the judge reduced the alimony to $1,480 and fixed arrearages at $65,257.56. The reduction in alimony was made retroactive to December 2, 1994, although the original reduction motion had been filed in 1991. Defendant again appealed.[2]
By our opinion, we affirmed all of the court's dispositions with the exception of the retroactive date of the alimony reduction and the amount of the counsel fee. We remanded for reconsideration, pointing out that while we were expressing no view as to the ultimate outcome, the judge should reconsider both matters in the light of defendant's now demonstrated changed circumstances. We also remanded for reconsideration of plaintiff's capital gains reimbursement claim. Following our remand, the parties, by consent order, settled all outstanding issues but for the $16,000 counsel fee. The trial judge then reconfirmed the original counsel fee and denied plaintiff's application for additional post-judgment fees. He also imposed a "constructive trust" on the residence owned by the second Mrs. McCarthy, apparently to secure payment of the $16,000 counsel fee and the approximately $21,000 agreed-upon arrearages despite the fact that he expressly declined to rule that title to that residence, originally taken by defendant and the second Mrs. McCarthy as tenants by the entirety, had been fraudulently conveyed to the second Mrs. McCarthy as sole owner in 1991. As the judge explained,
I want to make it clear that my decision today does not in any manner cast its eye upon that transfer, and either sanction it or disapprove it. The record simply does not permit that event to occur.
*35 Both parties appeal from the resulting order, plaintiff from the denial of additional counsel fees and defendant from the counsel fee order and the imposition of the trust.
We affirm those portions of the order appealed from assessing the quantum of the counsel fee and denying plaintiff additional fees for the reasons stated orally by the trial judge. We are satisfied that in respect of defendant's counsel fee obligation, the judge complied with the directive of our remand, gave reconsideration to this issue in the manner we prescribed and that his findings of fact justified his determination in accordance with the standards prescribed by Williams v. Williams, 59 N.J. 229, 281 A.2d 273 (1971). See also Filippone v. Lee, 304 N.J.Super. 301, 312, 700 A.2d 384 (App.Div. 1997); Heinl v. Heinl, 287 N.J.Super. 337, 349, 671 A.2d 147 (App.Div.1996). And see N.J.S.A. 2A:34-23. We are also satisfied that the same is true of the judge's decision to award no further counsel fees to plaintiff.
We reverse, however, the trust provision. In imposing the trust, the judge gave this explanation:
The case is found at 135 New Jersey 571 [641 A.2d 535], decided by the Supreme Court in 1994. And I also went back and reexamined the applicable statutory reference, N.J.S.A. 2A:34-23. And I did so simply because I wanted to be certain there was either legal or equitable authority for such a concept or perhaps both legal and equitable authority for the concept.

....
The question of how Jacobitti impacts is, I think, open to some question. Does Jacobitti really require the Court to make a finding of unusual or unanticipated circumstances in order to trigger equitable relief? I'm really not certain what the answer is to my question, but I am satisfied on the basis on what is before me, that there is a reason to create the constructive trust. And to some degree it lies in A) the age of Mr. McCarthy, B) some history of his being uninsurable because of medical circumstances, and lastly, C) the fact that there is, at least as I am speaking, no present likelihood that the income ability for 1997 would be substantially comparable to the income that he had secured during his employment, employments, excuse me, as a salesperson in the textile marketplace. And I'm satisfied that the combination of those coincidences, permit the constructive trust doctrine to be employed.

....
In addition, although the concept of the constructive trust is being ordered today, I'm not prepared to say, again upon the record, whether that trust reaches a fee interest in the premises, or simply addresses the curtesy interest that Mr. McCarthy would have in the premises. But the order of the Court will, when properly docketed and filed, constitute a presence to the world at large of a land interest of this plaintiff, in the event that the title was ever searched, either in terms of its marketability or its potential sale.
The trust that I create is not, and I underscore the word not, is not to be used as an enforcement mechanism. To the extent that there is an amount to which it is addressed, the amount is simply the combination of the counsel fee allowance from the prior proceeding of $16,623.05, and the amount of the existing arrearage, 21,000 perhaps and change. The reason the Court would not permit this constructive trust to be used as an enforcement mechanism really is two-fold. Firstly, it's because the interest of John B. McCarthy in the property is not definable. And I use,I'll accept that. I cannot define the interest on this record as either being a legal interest or simply a curtesy interest. Secondly, I am satisfied, both under Jacobitti and also the,let me just get ... under Slayton versus Slayton, 250 New Jersey Superior 47 [593 A.2d 365], that there has not been a showing that this interest ought to [be] used or reachable from an enforcement perspective. Therefore, the order has to include language to indicate that determination.
A natural question which plaintiff and her counsel raises is, all right, Judge, you've given us a remedy. When, if ever, is it triggerable? And I leave aside for *36 today the argument which Ms. Maul raises that, given the quote, equity in the parcel, the creation of a remedy is impractical, because there is so little equity. But I am satisfied, because none of us is able to predict the future, that the remedy that I allow for, can become operative if any one of the following conditions occurs. First, the death of John B. McCarthy. Second, death of Julie McCarthy. Third, the dissolution, should it ever happen, of the existing marriage between John B. and Julie McCarthy, or any filing of a complaint to dissolve. And lastly, the sale of the premises. Any of those four conditions become extant, the right to move to enforce the trust provisions will be authorized.
We think it plain that there are fatal technical, legal, and equitable flaws in this reasoning. First, although, as we have noted, the judge's oral statement limited the amount of the trust to the counsel fee and arrearages obligation, a finite amount, the order failed to do so, leaving the amount entirely open-ended and therefore never subject to satisfaction of record, at least on the face of the order. Second, there is no defined trust res. The judge was quite explicit in explaining that he was not attempting to define the trust res, that is, whether it was defendant's legal interest in the fee or his curtesy interest. Neither was, however, subject to impressment with a trust. Curtesy was abolished by the Legislature in 1980, long before this property was first acquired by defendant and his second wife. See N.J.S.A. 3B:28-2. There was thus no curtesy interest to which this trust could attach. Nor, obviously, could it have attached to defendant's legal title since he had no legal title by reason of the conveyance to his second wife. We think it plain, as a matter of substantive due process, that the property of a person who is not an obligor in any sense cannot be made answerable for the debt of another. The second Mrs. McCarthy has no financial obligation to the first Mrs. McCarthy. In the absence of a finding that the conveyance to her was fraudulentfinding the judge expressly declined to makeher separate property cannot be reached to answer for defendant's debts.
The illogic of the trust mechanism here is made clear by what the judge considered to be enforcement-triggering events. First was the death of defendant. We fail to see how the second Mrs. McCarthy could be made answerable, out of her separate property, for defendant's debts after his death. If she is the sole owner, his death is immaterial to the validity of her exclusive titleshe cannot inherit from him because she already owns it. Nor could that property have been reached on defendant's death had it been held by him and his second wife as tenants by the entirety, the form in which they originally took title. In that event, it is clear that the entire title, free of the claims of the debtors of the deceased tenant by the entirety, devolves upon the surviving tenant by the entirety. See, e.g., King v. Greene, 30 N.J. 395, 153 A.2d 49 (1959); Vander Weert v. Vander Weert, 304 N.J.Super. 339, 700 A.2d 894 (App.Div.1997).
The second triggering event is the death of the second Mrs. McCarthy. That too is patently an event irrelevant to defendant's obligation to plaintiff. The second Mrs. McCarthy is the owner of the property. She is free to devise it as she wishes. She is not obliged to devise it to defendant. She certainly is not obliged to devise any portion of it to plaintiff to pay her husband's debts. The situation would not be materially different if the property were held by defendant and his second wife as tenants by the entirety. In that case, a debtor's interest during the lifetime of both cannot exceed an undivided life interest in half subject to the other spouse's right of survivorship. Until the death of Mrs. McCarthy, that would be the extent of the executable interest of defendant in the property. And that would be the entire interest to which plaintiff would be presently entitled.
The third triggering event is a dissolution of the marriage between defendant and his second wife. That eventuality poses more problems than it solves. We think it plain that if that were the case, the judge before whom the matter would come would have the right to devise an equitable distribution scheme. There is no basis for an assumption that the second Mrs. McCarthy would not be *37 entitled to receive the whole and exclusive interest in the marital residence. That is not, of course, to say, that defendant's share of equitable distribution would not be subject to attachment, perhaps as early as the date of the filing of the complaint. But the second Mrs. McCarthy's separate property, even if it were eventually deemed a marital asset of the second marriage, is simply not within present reach of defendant's creditors on the ground that it might, at some hypothetical and speculative time in the future, be subject to equitable distribution. Nor could an attachment of defendant's equitable distribution rights reach, in advance, a specific piece of marital property.
That leaves us with the fourth triggering event, a sale by the second Mrs. McCarthy. That is an event in which defendant has no enforceable interest as long as he and his second wife are still married since she owns the property. If he has no right to reach the sale proceeds, neither do his creditors.
We are, therefore, satisfied that all that the trust mechanism accomplished here was an entirely unjustifiable cloud on the second Mrs. McCarthy's title with no definite statement of amount or res and with no perceivable benefit to plaintiff.
We further point out that the so-called Jacobitti[3] trust is entirely inapposite here. The Court in Jacobitti started with the premise that N.J.S.A. 2A:34-23 authorizes a trial judge to require an obligor to obtain life insurance to insure the meeting of his obligations, including alimony, after his death. It recognized, however, that if the defendant's age or health precludes him from obtaining life insurance at a reasonable premium and if his means permit, the judge may, in lieu of ordering life insurance, impose a trust on the obligor's present assets in order that those obligations may be met. The Jacobitti trust served, therefore, simply as a substitute for a life insurance requirement. The trial judge here, in relying on Jacobitti, did note defendant's agehe is in his sixties. What the judge failed to recognize, however, is that the 1988 divorce judgment between the parties had very precise and generous life insurance provisions in plaintiff's favor. There was, thus, no need for a Jacobitti trust because the life insurance for which the Jacobitti trust serves as substitute was already in place.
We recognize that N.J.S.A. 2A:34-23 permits the trial court to require security for the payment of marital obligations.[4] We do not, therefore, intend to suggest that imposition of a trust by way of security for defendant's payment of counsel fees and arrearages would never be appropriate. Indeed, there are circumstances in which it may be the most prudent course. What we do hold, however, is that such a trust may attach only to property of the obligor and must be definite as to its amount and as to the res. We also think it plain that where the obligations are reducible to judgment and where there are no continuing obligations to be secured, the trust device is entirely unnecessary since execution will fully serve the purpose. That is to say, if there is property on which to impress a trust, that property may also be levied upon. As we have pointed out, the trust here was to secure the finite sum of counsel fees and arrearages, some $37,000 to $38,000. Plaintiff is free to execute on any property or property interest of defendant. There is no need for her to wait until either defendant or the second Mrs. McCarthy dies, or they are divorced, or the second Mrs. McCarthy opts to sell. And if the obligation can be presently enforced by execution, there is no need for a trust mechanismand surely not a trust mechanism as vague and as legally defective as this one.
There is one final matter we must address. As we have noted, the first of the four payments on account of counsel fees was *38 to have been made in June of 1998. Defendant did not do so in view of the pendency of this appeal even though there was apparently neither a stay nor the posting of a supersedeas bond. Plaintiff, however, did not press the issue. If the parties cannot agree on when the first installment is to be made, the court will have to, and we remand for that purpose alone.
The order appealed from, to the extent it fixes the amount of counsel fees to be paid by defendant and denies additional post-judgment fees to plaintiff, is affirmed. To the extent it imposes a trust on the property of Julie A. McCarthy, it is reversed, and we remand to the trial court for entry of an order vacating the trust and for such other proceedings respecting defendant's installment payments as may be required.
NOTES
[1] However, with respect to the due date of the first annual payment, the order needs to be modified since the first installment date has passed.
[2] While we recognize that an ability to pay hearing is in and of enforcement over which the trial court retains jurisdiction, despite the pendency of an appeal, R. 2:9-1, a modification proceeding is not. We are, however, satisfied that a modification deemed necessary by the trial court as the result of an enforcement proceeding may be ordered even if an appeal is pending.
[3] Jacobitti v. Jacobitti, 135 N.J. 571, 641 A.2d 535 (1994).
[4] We further point out that the amendment of R. 5:3-5(c), effective April 5, 1999, governing attorney fees in civil family actions, authorizes the court to direct that marital property be sold or mortgaged to provide funds for payment of attorney fees both pendente lite and on final determination. It is clear, however, that that rule cannot apply to the separate property of the second Mrs. McCarthy which is, obviously, not marital property of defendant's marriage to the first Mrs. McCarthy.