544 S.E.2d 829

**Melanie J. GILFILLIN, Respondent,**

v.

**Eugene A. GILFILLIN, II as Personal Representative of the Estate of James M. Gilfillin, Jr., Petitioner.**

No. 25267.

Supreme Court of South Carolina.

Heard June 20, 2000.

Decided March 26, 2001.

408

David H. Wilkins, Timothy E. Madden and Joseph M. Ramseur, Jr., all of Wilkins & Madden, P.A., of Greenville, for petitioner.

Gwendolynn W. Barrett, of Barrett & Mackenzie, LLC, of Greenville, for respondent.

## ON WRIT OF CERTIORARI TO
## THE COURT OF APPEALS

TOAL, Chief Justice:

James Gilfillin ("Husband") was granted a divorce from his wife Melanie Gilfillin ("Wife"). Part of the family court's order required Husband to establish a $300,000 alimony trust to secure periodic alimony payments to Wife in the event he predeceased her. Husband appealed and the Court of Appeals affirmed, but also modified the order so that Husband could meet his obligation by securing life insurance. *See* *Gilfillin v. Gilfillin*, 334 S.C. 213, 512 S.E.2d 534 (Ct.App. 1999). Husband has appealed. We reverse.

### FACTUAL/PROCEDURAL BACKGROUND

Husband and Wife were married for over fourteen years and had one child. During the marriage, Husband worked for his family's insurance business while Wife primarily stayed at home and raised their son. Wife worked only occasionally as a substitute schoolteacher. Two years prior to their separation, Husband inherited a stock portfolio worth over $4.8 million and began taking steps to retire. Husband was 58 years old at the time of the divorce and Wife was 46 years old.

Wife suffers from schizoaffective disorder and her condition had an enormous impact on the marriage. Husband testified that Wife's illness led her to believe that he was engaged in numerous adulterous affairs. At the hearing, Wife introduced no evidence that Husband had committed adultery. While her condition is treatable, Wife often failed to take her medication. These lapses in medication resulted in a need for hospitalization. During the marriage, Wife was hospitalized on at least six occasions. These hospital stays ranged from a few days to several months.

On January 7, 1994, Wife changed the locks on their marital residence and left a note stating, "On the advice of my psychiatrist we are to stay away from each other. I have moved most of your clothes from the bedroom and your toiletries over to 12 Ashley Avenue. My attorney has a call into your attorney." As a result, Husband moved out of the marital residence. Wife then filed an action for separate maintenance and support. Husband sought a divorce based on desertion.

Under their equitable distribution settlement, Wife received marital assets valued at $121,395, including the marital home. Husband received $28,678 in marital assets and each party retained their respective nonmarital assets. Among the nonmarital assets Husband retained was his valuable stock portfolio.

While the family court granted Husband a divorce on the ground of desertion, he was ordered to pay $3,200 a month in periodic alimony. The court denied Wife's request for lump sum alimony. The family court also required Husband to establish a trust with $300,000 in cash or liquid securities to provide Wife with security for the payment of alimony in the event he predeceased her. Husband was to be the income beneficiary of the trust during his lifetime. After his death, Wife would be entitled to the interest and dividends and could invade the corpus of the trust as necessary to receive an amount equal to the periodic alimony payments. Upon Wife's death, the remaining corpus of the trust was to pass to a beneficiary designated by Husband.

Husband appealed the family court's order establishing the alimony trust. Initially, the Court of Appeals upheld the

family court order in an unpublished opinion. Husband's petition for a rehearing *en banc* was denied. The Court of Appeals then published an opinion modifying the family court order so that Husband could purchase life insurance *in lieu* of creating the alimony trust. Husband appealed the Court of Appeals' decision. During the pendency of the current appeal, Husband died unexpectedly. The issues before the Court are:

I. Did the family court have the authority to require a payor spouse to establish an alimony trust to secure the payment of periodic alimony beyond the payor spouse's death?

II. If the family court did have the authority to create the alimony trust, was it proper to require Husband to fund the trust at an amount greater than his share of the equitable division?

III. Did the Court of Appeals err in amending the family court order to allow Husband to maintain life insurance for payment of periodic alimony beyond his death as an alternative to the alimony trust?

## LAW/ANALYSIS

## I. The Family Court's Authority to Establish an Alimony Trust Securing Periodic Alimony Beyond the Payor Spouse's Death

Husband argues the family court did not have the authority to establish an alimony trust to secure payment of periodic alimony beyond his death. We agree.

At common law, the obligation to pay periodic alimony ended at death. *See McCune v. McCune*, 284 S.C. 452, 327 S.E.2d 340 (1985). Before 1990, a family court did not have the authority to require a payor spouse to secure the payment of periodic alimony beyond the payor spouse's lifetime. *See Hardin v. Hardin*, 294 S.C. 402, 365 S.E.2d 34 (Ct.App.1987). In *Hardin*, the Court of Appeals found a family court needed both statutory authority and a finding of special circumstances before it could require a payor spouse to secure periodic alimony beyond his death by means of life insurance. *Id.* Several subsequent cases also struck down family court orders attempting to secure periodic alimony payment beyond the life of the payor spouse. *See, e.g., Ferguson v. Ferguson*, 300 S.C.

1, 386 S.E.2d 267 (Ct.App.1989); *Hickman v. Hickman*, 294 S.C. 486, 366 S.E.2d 21 (Ct.App.1988).

In 1990, the Legislature amended S.C.Code Ann. § 20–3–130 (Supp.1999). Section 20–3–130(B)(1) now. codifies the common law rule that periodic alimony terminates at death. That section also states that a family court has the power to order "[p]eriodic alimony to be paid but terminating . . . upon the death of either spouse (*except as secured in subsection (D)*)." *Id.* (emphasis added). Therefore, a family court can require payments of periodic alimony beyond the death of the payor spouse only when that alimony is "as secured in subsection (D)."

Subsection 20–3–130(D) states:

In making an award of alimony or separate maintenance and support, the court may make provision for security for the payment of the support including, but not limited to, requiring the posting of money, property, and bonds and may require a spouse, with due consideration of the cost of premiums, insurance plans carried by the parties during marriage, insurability of the payor spouse, the probable economic condition of the supported spouse upon the death of the payor spouse, and any other factors the court may deem relevant, to carry and maintain life insurance so as to assure support of a spouse beyond the death of the payor spouse.

The Court of Appeals held the phrase "but not limited to" gave the family court the authority to require Husband to create the alimony trust to secure payment of periodic alimony beyond his death.

Husband argues that subsection 20–3–130(D) has two purposes: (1) it allows the family court to secure payments of alimony during the lifetime of the payor spouse by requiring the posting of money, property, and bonds; and (2) the section also creates the statutory authority *Hardin* found the family court lacked to require a payor spouse to obtain life insurance to secure payment of periodic alimony beyond the payor's death. Husband's contention is that the phrase "but not limited to" only modifies the first portion of the section listing how the family court may secure payment of alimony during the lifetime of the payor spouse. Husband argues that the

only method sanctioned by the Legislature for securing payment of periodic alimony beyond the life of the payor spouse is life insurance. We agree with Husband.

 The cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the Legislature. *See Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 476 S.E.2d 690 (1996). If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing any rules of statutory interpretation and this Court has no right to look for or impose another meaning. *See Paschal v. State of South Carolina Election Comm'n,* 317 S.C. 434, 454 S.E.2d 890 (1995). Where a statute is ambiguous, however, we must construe the terms of the statute. *See Lester v. South Carolina Workers' Compensation Comm'n,* 334 S.C. 557, 514 S.E.2d 751 (1999). We find the language of section 20–3–130 is ambiguous on its face because it is unclear whether the Legislature meant the phrase "but not limited to" to modify only the ways to secure payment of support during the payor's lifetime or whether the phrase is also meant to modify the later discussion about securing payment after the payor's death through life insurance. Since the plain language of the statute does not reveal one clear meaning, we will apply the rules of statutory interpretation to ascertain the intent of the General Assembly.

 Since subsection 20–3–130(D) is in derogation of the common law rule that periodic alimony terminates at the death of the payor spouse, the statute will be strictly construed. "Statutes in derogation of the common law are to be strictly construed." *South Carolina Dep't. of Social Services v. Wheaton,* 323 S.C. 299, 474 S.E.2d 156 (Ct.App.1996). We will not extend the application of the statute beyond the clear legislative intent. *Id.* In the current case, the statute is ambiguous and we find no clear legislative intent supporting the use of devices other than life insurance to secure payment of periodic alimony beyond the death of the payor spouse.

Allowing family courts to invent new methods of securing the payment of periodic alimony beyond the death of the payor spouse would be a dramatic change to the law of alimony. Until 1990, South Carolina had no sanctioned meth-

od for securing the payment of such alimony beyond death and attempts to do so were routinely struck down. *See Ferguson v. Ferguson*, 300 S.C. 1, 386 S.E.2d 267 (Ct.App.1989); *Hickman v. Hickman*, 294 S.C. 486, 366 S.E.2d 21 (Ct.App.1988); *Hardin v. Hardin*, 294 S.C. 402, 365 S.E.2d 34 (Ct.App.1987). With the enactment of subsection 20–3–130(D), the Legislature provided that life insurance could be used to secure such payment whenever the family court made factual findings concerning five factors favored requiring such . insurance. Consistent with our rule of statutory construction that statutes in derogation of the common law are strictly construed, subsection 20–3–130(D) is limited to allowing life insurance, the only specifically endorsed method of securing periodic alimony, as the only method for securing payments beyond the life of the payor spouse.

■ Our ruling also guarantees consistency between subsection 20–3–130(B)(1) and the language "but not limited to" in subsection 20–3–130(D). "In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect." *TNS Mills, Inc. v. South Carolina Dep't of Revenue*, 331 S.C. 611, 620, 503 S.E.2d 471, 476 (1998). Subsection 20–3–130(B)(1) codifies the common law rule that periodic alimony terminates at the death of either spouse except when the alimony is secured as discussed in subsection (D). As the Court of Appeals interpreted the phrase "but not limited to," a family court would not be limited by any restrictions in subsection (D) when securing payment of periodic alimony.

Under the Court of Appeals' interpretation, a family court would be free to invent new methods, such as this alimony trust, for securing payment of periodic alimony after the death of the payor spouse. While the use of life insurance is restricted in subsection (D) for use only after the family court makes comprehensive review of five distinct issues, the Court of Appeals interpretation would require no review of any specific factors whenever a family court creates a new method for securing alimony. Such an unrestricted approach and dramatic change of the common law is not supported by the statute.

## II. Remaining Issues

Since the family court did not have the authority to create the alimony trust, we need not address Husband's argument that the court erred in funding the trust with his nonmarital property. In addition, both parties have agreed that Husband's argument concerning the Court of Appeals' modification of the family court order is moot in light of Husband's death.

■ In her brief to this Court, Wife argues that if the alimony trust is held improper, she should be awarded the $300,000 as lump sum alimony. However, the trial court rejected Wife's request for lump sum alimony and she did not appeal that decision. As a result, the issue of lump sum alimony is not properly before this Court. Furthermore, Wife's right to receive alimony terminated with Husband's death so that any remand on the issue of lump sum alimony would be improper.

### CONCLUSION

Based on the foregoing, we **REVERSE** the Court of Appeals.

WALLER, BURNETT and PLEICONES, JJ., concur. MOORE, J., dissenting in a separate opinion.

MOORE, Justice (dissenting):

I respectfully dissent. I would hold the family court had statutory authority to order Husband to set up an alimony trust. Even if the family court did not have the authority, as the majority holds, I would remand the case for the family court to reconsider an award of lump sum alimony.

I agree with the majority's conclusion that § 20–3–130(D) is ambiguous and thus the intent of the legislature needs to be ascertained in interpreting this code section. *Gilstrap v. South Carolina Budget & Control Bd.*, 310 S.C. 210, 423 S.E.2d 101 (1992)(if statute is ambiguous, primary rule of construction is to ascertain and give effect to legislature's

intent). However, I disagree with the majority as to what the legislature intended when it amended § 20–3–130.[1]

In a strikingly similar case, the New Jersey Supreme Court held that a like statute does authorize the creation of a trust to secure the payment of alimony because the legislature intended to protect the former spouse. *Jacobitti v. Jacobitti*, 135 N.J. 571, 641 A.2d 535 (1994). In *Jacobitti*, the family court ordered a husband to create the same type of trust as ordered in the current case. The ninety-year-old husband was worth six to nine million dollars. The wife, who was nineteen years younger than her husband, had multiple sclerosis and was totally dependant on her ex-husband. The wife was awarded $75,000 in the equitable division of the marital property following the dissolution of their sixteen-year marriage. The court held the ninety-year old-husband, if insurable at all, would have to pay exorbitant premiums so that life insurance was not a viable option. The court held a trust accomplishes the legislature's intent and was a form of self-insurance. *Id.* at 540. The court concluded the trust simply replaces the statutory exception for life insurance. *See also McCarthy v. McCarthy*, 319 N.J.Super. 138, 725 A.2d 32 (1999)("Jacobitti trust" is simply substitute for life insurance).

Here, the family court found that "[t]he alternative of the purchase of life insurance [was] too expensive due to the Husband's age" and, based primarily on that finding, determined that the appropriate method to provide security would be through the creation of the trust. The family court found several factors that would warrant continuation of spousal support in the event Husband predeceased Wife. First, there was the twelve-year age difference between the parties and the longer life expectancy accorded to Wife by the life expectancy tables set forth in S.C.Code Ann. § 19–1–150 (1985),

---

1. I do not think § 20–3–130 is in derogation of the common law as the majority holds. In *Hardin v. Hardin*, 294 S.C. 402, 365 S.E.2d 34, 36 (Ct.App.1987), the court held "absent special circumstances *or* specific statutory authority, both of which are lacking here, the Family Court does not have the inherent power to require a supporting spouse to obtain or maintain, solely as an incident of periodic support, a life insurance policy naming the dependent spouse as beneficiary ..." (emphasis added). This case and those following it do not prohibit ordering life insurance to secure alimony if there are special circumstances or statutory authority.

making it reasonably foreseeable that Wife would survive Husband by more than fourteen years. In addition, Wife's history of mental problems, which have resulted in significant medical expenses and her inability to maintain gainful employment, supports the family court's finding that cessation of alimony payments due to Husband's death would leave her destitute. Given these facts, I would hold the family court acted within its discretion in determining there were special circumstances supporting the deviation from the normal rule that alimony payments would cease upon the death of either party. The family court then found that requiring Husband to obtain life insurance would be too expensive due to Husband's age and further Husband did not at that time have any life insurance under which he could designate Wife as the beneficiary. It was under these circumstances that the family court ordered Husband to create a trust to provide security for Wife. I find it inequitable that Wife will now receive nothing.

Furthermore, had the family court known that the majority would hold he did not have the authority to order the creation of the trust, I believe he would have ordered Husband to obtain life insurance or awarded lump sum alimony.[2] The family court was attempting to be equitable to both parties by not requiring Husband to obtain life insurance as it would be too expensive. I note Husband had a net worth of $4.9 million and requiring him to obtain life insurance or pay lump sum alimony would not bankrupt him. The majority's decision, however, will leave Wife destitute.[3]

---

**2.** Special circumstances justifying a lump sum award include the need to continue support after the death of the supporting spouse. *See McCune v. McCune,* 284 S.C. 452, 327 S.E.2d 340 (1985); *Hendricks v. Hendricks,* 285 S.C. 591, 330 S.E.2d 553 (Ct.App.1985).

**3.** As to the second issue raised on appeal, Husband contends the family court does not have jurisdiction to apportion non-marital property. Husband received approximately $29,000 in marital assets in equitable distribution and he was ordered to pay Wife $3,200 per month in periodic alimony. However, requiring Husband to fund a trust to secure the payment of periodic alimony is not apportioning non-marital property. Within one year, Husband therefore would be using non-marital assets to pay the periodic alimony. Alimony is not limited to a spouses's share of the equitable distribution. Further, the family court did not order any specific property to be transferred to fund the trust. *Cf. Thornton v. Thornton,* 328 S.C. 96, 492 S.E.2d 86 (1997)(family

Assuming the majority is correct in its holding that the family court does not have the statutory authority to order a trust, in my opinion, the family court should now reconsider Wife's request for lump sum alimony. This case presents a situation similar to that in *Fort v. Fort*, 270 S.C. 255, 241 S.E.2d 891 (1978). There the wife sought a divorce, alimony, and equitable distribution. The husband counterclaimed for a divorce. The master denied both parties' claims for a divorce, but granted the wife use of the marital home. The husband excepted to the ruling, the wife did not. The circuit court reversed the ruling and granted husband a divorce but did not address the wife's request for alimony or property division. In ruling on the wife's contention that she was entitled to consideration by the trial court of her request for alimony, we said:

> After the husband excepted to the master's report, the wife might have conditionally excepted, submitting that if the judge found that the husband was entitled to a divorce, he should order alimony and a property settlement. We are not prepared to say she should have anticipated the ruling and that her failure to file conditional exceptions should bar her from having the issues considered. The issues were definitely raised in her pleadings and in her prayer for relief.

270 S.C. at 260, 241 S.E.2d at 894. In *Reaves v. Reaves*, 262 S.C. 499, 206 S.E.2d 405 (1974), the trial court granted the husband a divorce on the ground of desertion and denied the wife's request for alimony. On appeal we reversed and remanded for consideration of alimony. We held: The denial of any alimony to the wife was predicated at least in part, upon the court's finding that the husband was entitled to a divorce on the ground of desertion. In view of our holding that the husband was not so entitled, the situation is now substantially different. Whether, under this circumstance and all other pertinent circumstances, the wife is now entitled to any support or alimony, is a matter which has not actually been passed upon by the court below and one which we are reluctant to consider initially in the present state of the record.

---

court had no authority to transfer specific property as security for alimony).

Such issue, or question, is therefore left open for such further proceedings thereabout as the parties hereto might deem appropriate....

*Id.* at 407. *See also Timms v. Timms,* 290 S.C. 133, 348 S.E.2d 386 (Ct.App.1986)(citing *Reaves* ). Similarly, here Wife did not appeal the denial of her request for lump sum alimony as she was awarded permanent periodic alimony secured by the trust. In my opinion, whether Wife is entitled to an award of lump sum alimony now should be a matter for the family court to reconsider. Furthermore, I strongly disagree with the majority's conclusion that the right for Wife to receive lump sum alimony terminated upon Husband's death. Unlike an award of periodic alimony which terminates upon the payor's death, an award of lump sum alimony does not. Accordingly, I would affirm the Court of Appeals in result or, at least, remand for the family court to reconsider an award of lump sum alimony.