THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Marion Ann Currow, Personal Representative for the Estate of James Marion 
 Glaze,        Appellant,
 
 
 

v.

 
 
 
Evelyn M. Glaze,       
Respondent.
 
 
 

Appeal From Charleston County
Frances  P. Segars-Andrews, Family 
 Court Judge

Unpublished Opinion No. 2003-UP-258
Submitted March 10, 2003  Filed April 
 8, 2003

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

 
 
 
Cynthia Barrier Castengera, of Newland; David Dusty Rhoades, 
 of Charleston, for Appellant.
John Graham Altman, III, of Hanahan; Thomas R. Goldstein, 
 of Charleston, for Respondent.
 
 
 

PER CURIAM:  In this divorce action, Husband 
 appeals from an order of the family court (1) awarding Wife alimony, (2) ordering 
 Husband to maintain a life insurance policy naming Wife as the beneficiary, 
 (3) finding Husbands home was transmuted into marital property, and (4) denying 
 Husband attorneys fees. We affirm in part, reverse in part, and remand.
FACTUAL/PROCEDURAL BACKGROUND
The parties were married on February 
 14, 1988 and separated July 5, 2000.  This was their third marriage to each 
 other, but they had no children together.  Wife testified that in late 1987, 
 she was offered a management position with a restaurant in Hilton Head that 
 carried good benefits and a larger salary.  She had made arrangements for the 
 job in Hilton Head, hiring people and obtaining an apartment, but she and Husband 
 were seeing each other at that time so she stayed in Charleston to remarry Husband.  
 In July, 2000, after the parties had a disagreement, Wife left the home around 
 midnight one night and went to stay with one of her daughters.  
Both parties are elderly and in poor health.  Husband, 
 who was seventy-two at the time of the hearing, testified he suffered from a 
 serious heart condition, asbestosis, sleep apnea and arthritis.  Wife testified 
 she was seventy years old and she suffered from arthritis in both hands and 
 knees, as well as in her lower back, spasms of her esophagus, a torn rotator 
 cuff in the right shoulder, a torn tendon in the left shoulder, and foot problems 
 requiring surgery on both feet.  Husband is retired and draws Social Security 
 and a pension.  He testified, and the court found, he is no longer able to work.  
 Wife draws Social Security and works as a waitress.  The court found Wife was 
 only able to work three days a week because of her health problems.  Wife stated 
 she did not believe she was going to be able to continue working much longer.  
 The family court found Husbands demeanor on the stand demonstrated the difficulty 
 Wife lived with each time Husband was angered.  The court determined Wife had 
 to leave in the middle of the night and that Husbands anger and continued 
 bad behavior . . . caused the break up of this marriage.  
The family court ordered that Husband 
 pay Wife alimony of $200.00 per month plus pay for her health insurance.  If 
 Husband was unable to keep Wife on his health insurance, he was to increase 
 his alimony payments by $114.00 per month, the amount it cost Husband to maintain 
 Wife on the health insurance policy.  The court further ordered Husband to maintain 
 Wife as the beneficiary of his life insurance policy, found the marital home 
 owned by Husband was transmuted, awarded Wife 25% of the value of the home and 
 50% of all personal marital property, and ordered that the parties be responsible 
 for their own attorneys fees.  Husband appeals.
STANDARD OF REVIEW
In appeals from the family court, this court has 
 the authority to find the facts in accordance with its own view of preponderance 
 of the evidence.  Rutherford v. Rutherford, 307 S.C. 199, 204, 414 S.E.2d 
 157, 160 (1992).  This broad scope of review does not, however, require this 
 court to disregard the findings of the family court.  Stevenson v. Stevenson, 
 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981).  Neither are we required to ignore 
 the fact that the trial judge, who saw and heard the witnesses, was in a better 
 position to evaluate their credibility and assign comparative weight to their 
 testimony.  Cherry v. Thomasson, 276 S.C. 524, 525, 280 S.E.2d 541, 541 
 (1981). 
LAW/ANALYSIS
I.  Alimony
Husband first contends the family court 
 erred in finding Wife was entitled to alimony.  We disagree.
The decision to grant or deny alimony rests within 
 the sound discretion of the family court judge, whose conclusions will not be 
 disturbed on appeal absent an abuse thereof.  Sharps v. Sharps, 342 S.C. 
 71, 79, 535 S.E.2d 913, 917 (2000).  An abuse of discretion occurs when the 
 judge is controlled by some error of law or where the order, based upon findings 
 of fact, is without evidentiary support.  Dearybury v. Dearybury, 351 
 S.C. 278, 282, 569 S.E.2d 367, 369 (2002).  Alimony is a substitute for the 
 support which is normally incident to the marital relationship.  Johnson 
 v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  Generally, 
 alimony should place the supported spouse, as nearly as is practical, in the 
 same position he or she enjoyed during the marriage.  Id.  It is the 
 duty of the family court to make an alimony award that is fit, equitable, and 
 just if the claim is well-founded.  Woodward v. Woodward, 294 S.C. 210, 
 217, 363 S.E.2d 413, 417 (Ct. App.1987).
Husband asserts error in several aspects of the award of alimony 
 to Wife.  He first contends the family court made a mathematical error in its 
 determination of his monthly income, thereby warranting reversal of the alimony 
 award.  Specifically, Husband argues the court found his monthly income totaled 
 $1,681.00 from his pension and social security, but also found he received $1,051 
 from his pension and $333.00 from social security, for a total of only $1,384.00.  
 Thus, he contends his income is nearly $300.00 less than that found by the court 
 and used in determining alimony.  We disagree.
While the court did determine Husband received a total of $1,681.00 a month 
 from social security and his pension, it is clear this is Husbands gross pay 
 before deductions for taxes and insurance.  The record reflects, after deductions, 
 Husband receives $1,054.85 a month from his pension. [1]   He receives an additional $383.00 from social 
 security, less $50.00 for Medicare, for a net social security payment of $333.00 
 a month.  His financial declaration lists state and federal taxes of $138.00 
 per month. [2]   Thus Husband 
 nets approximately $1,250.00 a month after deductions for taxes and insurance.  
 Additionally, while Husband listed expenses of $1,403.42 per month, the court 
 found Husband had exaggerated his monthly food and household supply expense 
 of $500.00, and noted Husband only had four more payments left on a $100.00 
 monthly debt.  Thus, the court determined Husband only required approximately 
 $1,000.00 a month to cover his needs.  Based on our thorough review of the record, 
 we find no error in the family courts findings on the incomes and expenses 
 of the parties, and the resulting alimony award. 
 [3] 
Husband next asserts the family court improperly considered the parties two 
 prior marriages to each other in awarding Wife alimony.  While the court did 
 make certain findings in regard to the couples previous history, there is no 
 indication the court relied on any of these findings in determining Wifes entitlement 
 to alimony.  Further, the court specifically considered the relevant marriage 
 was of thirteen years duration.  It further noted that Wife had to do everything 
 for the husband, including all the cooking, cleaning, laundry, housework, and 
 yard work for the last twelve years they lived together.  Based on our review 
 of the record, we find no reversible error on this ground. 
 As a final attack on the award of alimony, Husband asserts the court 
 failed to give proper consideration to the required factors in determining alimony, 
 or, to the extent the court considered the factors, erred in determining Wife 
 was entitled to any alimony.  We disagree.
Factors to be considered in making an alimony award 
 include:  (1) duration of the marriage and ages of the parties;  (2) physical 
 and emotional health of the parties;  (3) educational background of the parties;  
 (4) employment history and earning potential of the parties;  (5) standard of 
 living established during the marriage;  (6) current and reasonably anticipated 
 earnings of the parties;  (7) current and reasonably anticipated expenses of 
 the parties;  (8) marital and nonmarital properties of the parties;  (9) custody 
 of children;  (10) marital misconduct or fault;  (11) tax consequences;  and 
 (12) prior support obligations;  as well as (13) other factors the court considers 
 relevant.  S.C. Code Ann. § 20-3-130(C) (Supp.2002).   
Here, the family court expressly considered the 
 thirteen year duration of the marriage, the bad health of both parties and their 
 employment histories, as well as the fact that Husband was retired and unable 
 to work and Wife was only able to work three days a week because of her failing 
 health.  The court further considered the limited earnings and necessary expenses 
 of the parties and determined Husband over exaggerated his expenses and had 
 sufficient income to meet his requirements, while Wife was in need of alimony 
 to cover her expenses. [4]   Further, 
 the court determined Husbands anger and continued bad behavior was the cause 
 of the disintegration of the marriage.  Finally, the court gave some consideration 
 to the fact that Wife forewent the opportunity of a good job with benefits in 
 another city in order to stay in the Charleston area and remarry the husband.  
 In making an award of alimony, the family court must consider all relevant factors 
 and give weight in such proportion as it finds appropriate to these factors.  
 S.C. Code Ann. § 20-3-130(C) (Supp.2002).  Particularly in light of Wifes advanced 
 age and declining health, her limited earning capacity, Husbands ability to 
 pay, and Husbands fault in the break up of the marriage, we can discern no 
 abuse of discretion. 
II.  Life Insurance
Husband next contends the family court 
 erred in requiring him to maintain a life insurance policy with Wife as the 
 beneficiary.  We agree.
In its order, the family court stated, The husband 
 has or had a Ten Thousand ($10,000.00) Dollar life insurance policy through 
 his retirement and the wife shall be named and maintained as the beneficiary 
 of said policy immediately, and provide proof to the wife each year that this 
 provision is being adhered to.  The court failed to indicate the basis for 
 this requirement, although presumably it was for security of the alimony award.  
 Further, the court failed to recite any factors or extraordinary circumstances 
 warranting such an order.
This court recently addressed the issue of a family 
 courts order requiring a supporting spouse to secure his alimony obligation 
 with a life insurance policy where the court failed to include a comprehensive 
 review of the required statutory factors.  In Allen v. Allen, 347 S.C. 
 177, 554 S.E.2d 421 (Ct. App. 2001), this court stated as follows:

Prior to 1990, the family court was without authority to require a supporting 
 spouse to secure periodic alimony beyond the supporting spouses lifetime.  
 Gilfillin v. Gilfillin, 344 S.C. 407, 411, 544 S.E.2d 829, 831 (2001).  
 In the case of Hardin v. Hardin, 294 S.C. 402, 365 S.E.2d 34 (Ct. App. 
 1987), this court found that a family court needed both statutory authority 
 and a finding of special circumstances before it could require a payor spouse 
 to secure periodic alimony beyond the payor spouses death.  Id.  In 
 1990, however, the Legislature amended S.C. Code Ann. § 20-3-130 (Supp. 2000) 
 to codify the common law rule that periodic alimony terminates at death, but 
 further provided an exception to the rule when such alimony is secured pursuant 
 to subsection (D) of § 20-3-130.  Id. at 412, 544 S.E.2d at 831.  The 
 statute now provides as follows:
 
In making an award of alimony or separate maintenance and 
 support, the court may make provision for security for the payment of the support 
 including, but not limited to, requiring the posting of money, property, and 
 bonds and may require a spouse, with due consideration of the cost of premiums, 
 insurance plans carried by the parties during marriage, insurability of the 
 payor spouse, the probable economic condition of the supported spouse upon the 
 death of the payor spouse, and any other factors the court may deem relevant, 
 to carry and maintain life insurance so as to assure support of a spouse beyond 
 the death of the payor spouse.
S.C. Code Ann. § 20-3-130 (D) (Supp. 2000).  
 
Pursuant to this statute, the family court may provide for 
 security of periodic alimony payments beyond the death of the supporting spouse 
 through life insurance whenever the family court [makes] factual findings concerning 
 five factors favored requiring such insurance.  Gilfillin, 344 S.C. 
 at 414, 544 S.E.2d at 832.  [T]he use of life insurance is restricted in subsection 
 (D) for use only after the family court makes comprehensive review of five distinct 
 issues.  Id.  Because the family court failed to make a comprehensive 
 review of the necessary factors allowing the security of alimony through life 
 insurance pursuant to S.C. Code § 20-3-130 (D) and Gilfillin, we remand 
 this issue to the family court.

Allen, 347 S.C. at 186-87, 554 S.E.2d at 
 426.
Because the family court failed in the instant case to make 
 the necessary review of factors, we remand this issue to the family court for 
 reconsideration consistent with this opinion.
III.  Transmutation of Marital Home
Husband also contends the family court 
 erred in determining the home he owned prior to the marriage was transmuted 
 into marital property.  Wife argues the home was transmuted based on the fact 
 that she contributed to the reduction of the debt, as well as to maintenance 
 of the home by virtue of her housework. 
Marital property is defined by S.C. Code 
 Ann. § 20-7-473 (Supp. 2002) as all real and personal property which has been 
 acquired by the parties during the marriage and which is owned as of the date 
 of filing or commencement of marital litigation . . . regardless of how legal 
 title is held. . . .  On the other hand, property acquired by either party 
 prior to the marriage is nonmarital property.  S.C. Code Ann. § 20-7-473(2) 
 (Supp. 2002).  In certain circumstances, however, nonmarital property may be 
 transmuted into marital property if:  (1) it becomes so commingled with marital 
 property as to be untraceable;  (2) it is jointly titled;  or (3) it is utilized 
 by the parties in support of the marriage or in some other manner so as to evidence 
 an intent by the parties to make it marital property.  Greene v. Greene, 
 351 S.C. 329, 338, 569 S.E.2d 393, 398 (Ct. App. 2002).  Transmutation is a 
 matter of intent to be gleaned from the facts of each case, and the spouse claiming 
 transmutation must produce objective evidence showing that, during the marriage, 
 the parties themselves regarded the property as the common property of the marriage.  
 Id.  Without some additional evidence of intent to treat the property 
 as marital, mere use of separate property to support the marriage is insufficient 
 to establish transmutation.  Id.  While improvements made by a spouse 
 to nonmarital property may result in the spouse's receiving an equitable interest 
 in the property, contributions of time and labor do not necessarily prove transmutation.  
 Murray v. Murray, 312 S.C. 154, 158, 439 S.E.2d 312, 315 (Ct. App. 1993).
It is undisputed that Husband purchased 
 the home in 1965, well before the parties marriage, and the mortgage was paid 
 off in 1995 .  Husband testified he made all of the mortgage payments on the 
 home, and that he used his retirement funds and social security to make the 
 payments during the most recent marriage to Wife.  The home was titled in Husbands 
 name only.  Wife testified that one of the reasons she left was because Husband 
 made a will leaving the house to his children and refused to provide that the 
 house could be sold to cover her medical care in the event that he predeceased 
 her.  Thus, there is evidence Wife understood Husband did not intend to make 
 the house marital property.  Wife failed to produce affirmative objective evidence 
 showing that, during the marriage, the parties themselves regarded the property 
 as the common property of the marriage.  Based on the foregoing, we find the 
 family court erred in finding the house was transmuted into marital property.  
 We therefore reverse on this issue.
IV.  Attorneys Fees
Finally, Husband asserts the family court 
 erred in failing to consider his entitlement to attorneys fees.  We disagree. 

During his testimony, Husband initially 
 requested Wife reimburse him for attorneys fees and costs.  Thereafter, Husband 
 displayed some confusion as to whether he was requesting the fees.  However, 
 Husband ultimately testified that he would waive his request for attorneys 
 fees and stated, I will pay it.  Based on his testimony, we find no error 
 in the family courts denial of attorneys fees to Husband.
CONCLUSION
For the foregoing reasons, the family court order is
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
ANDERSON, HUFF and MOREHEAD, JJ., concur.

 
 [1] This 
 net figure includes a $114.00 deduction for Wifes health insurance.  

 
 [2] While 
 Husband asserts on appeal that he has a total of $188.00 withheld each month 
 for taxes, he appears to be including $50.00 withheld from his social security 
 for Medicare, but this $50.00 has already been taken into account in his net 
 receipt of $333.00 in social security.  

 
 [3] Husband 
 also asserts error in the courts failure to consider the $114.00 per month 
 deduction from the husbands pension for Wifes health insurance, however, 
 as noted, this deduction is already considered in Husbands net monthly pension 
 payment of $1,054.85. 

 
 [4] Husband 
 asserts Wife earns more than the $733.00 net income attributed to her by the 
 court.  He points to Wifes admission in her deposition that she does not 
 report cash tips.  While Wife stated she did not keep up with nor record cash 
 tips for income tax purposes, she indicated she received very little tip money 
 in the way of cash, but received most of it through credit card transactions 
 for which she paid a required eight percent in taxes on that amount.  Further, 
 there is no indication in the record Wife did not include her tip money in 
 her earnings for purposes of this action.  To the contrary, the record shows 
 Wife worked two to three days per week in six to seven hour shifts earning 
 a base pay of only $2.19 per hour.  She testified she earned $125.00 to $150.00 
 on a good week, and her financial declaration showed she netted $385.00 a 
 month from her waitressing job.  Thus, it is clear her tips must have been 
 included within her gross and net earnings figures.  Husband also argues the 
 wife cut back work to three days a week in order to care for her eight month 
 old grandson yet she failed to charge for her babysitting services.  However, 
 the record reflects that Wife cut back her workdays because of her numerous 
 health problems.  Further, Wifes daughter testified, because of her mothers 
 declining health and her sons increasing age, she did not know how much longer 
 her mother could physically care for her son.