694 S.E.2d 230

**Jan Ford BODKIN, Respondent/Appellant,**

v.

**Lester Hobart BODKIN, III, Appellant/Respondent.**

**No. 4689.**

Court of Appeals of South Carolina.

Heard Nov. 17, 2009.

Decided May 27, 2010.

Anita Ruth Floyd, of Conway, for Appellant/Respondent.

Charles Richard Rhodes, Jr., of Surfside Beach, for Respondent/Appellant.

KONDUROS, J.

Both Lester Hobart Bodkin, III (Husband) and Jan Ford Bodkin (Wife) appeal from the grant of a divorce on the ground of one year's continuous separation. Husband argues the family court erred in (1) failing to grant him a divorce on the grounds of Wife's habitual drunkenness, (2) awarding Wife alimony, (3) apportioning the marital estate, and (4) awarding Wife attorney's fees. Wife contends the family court erred in its determination of marital property. We affirm as modified.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married in 1988. Wife worked in Atlanta, Georgia, but after the parties married she quit her job and moved to Surfside Beach, South Carolina, where Husband lived. Prior to the marriage, both parties owned separate residences, which they sold once they were married and purchased the marital home. Wife became a stay-at-home mother to Husband's two children from a previous marriage, Bart (Stepson) and Georgia (Stepdaughter), and eventually to their child, Whitney (Daughter), who was born in 1991. She also obtained her bachelor's and master's degrees during that time and her "licensed independent social work credentials."

Wife worked sporadically after obtaining her degrees, taking two years off to care for her parents.

The parties separated on October 8, 2005, and lived separate and apart from that time forward. Wife began working to establish her practice around that time. On January 5, 2006, Wife filed a complaint requesting an order of separate support and maintenance, custody of Daughter, child support, alimony, a substantial portion of the marital assets, and attorney's fees. Husband filed an answer and counterclaim requesting a divorce on the ground of Wife's habitual intoxication. Prior to the commencement of trial, Wife amended her complaint to request a divorce on the ground of one year's continuous separation. The parties also agreed Wife would have custody of Daughter and Husband would have visitation.

Prior to trial, Wife filed a Petition for Citation for Contempt alleging Husband used money from a money market account to purchase property in Georgetown County (Georgetown Property) while an order was in effect prohibiting the parties "from injuring, damaging, destroying, selling, alienating, exchanging, trading, encumbering, collaterizing, or otherwise liquidating or decreasing in value any personal or real property, until a final order on the merits is issued." The family court found Husband had "dissipated an asset," held him in contempt, and ordered him to pay $500 in court costs, $1,500 to Wife as a fine, and $585 in attorney's fees to Wife's attorney.

Following a trial, the family court found Husband's "evidence did not meet the level of proof necessary to establish habitual drunkenness" and he was not entitled to a divorce on that ground. The family court granted Wife a divorce based on one year's continuous separation. The family court determined the marital estate should be distributed fifty percent to Wife and fifty percent to Husband. It found the marital home was a marital asset and awarded it to Wife. However, it determined Husband had contributed the entire down payment of $81,707 with premarital funds and awarded him a credit in that amount. The family court awarded Wife permanent, periodic alimony of $1,500 per month. Additionally, the family court awarded Wife $15,000 in attorney's fees and costs. Wife filed a Rule 59(e), SCRCP, motion for reconsideration,

and Husband filed a Rule 60, SCRCP, motion for a new trial. The family court denied both motions. This appeal followed.

## STANDARD OF REVIEW

"On appeal from a family court order, this [c]ourt has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence." *E.D.M. v. T.A.M.*, 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992). "Because the family court is in a superior position to judge the witnesses' demeanor and veracity, its findings should be given broad discretion." *Scott v. Scott*, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003). When the evidence is disputed, the appellate court may adhere to the family court's findings. *Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996).

## LAW/ANALYSIS

### I. HUSBAND'S APPEAL

#### A. Habitual Drunkenness

■ Husband argues the family court erred in failing to grant him a divorce on the grounds of Wife's habitual drunkenness. We disagree.

■ A divorce may be granted on the ground of habitual drunkenness, including drunkenness caused by the use of any narcotic drug. S.C.Code Ann. § 20–3–10(4) (1985). "In order to prove habitual drunkenness, there must be a showing that the abuse of alcohol caused the breakdown of the marriage and that such abuse existed at or near the time of filing for divorce." *Epperly v. Epperly*, 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994). In *Epperly*, "Wife and her witnesses testified that Husband drank heavily on a daily basis. However, Husband and his witnesses testified that he seldom drank and never to excess." *Id.* The supreme court adopted the findings of the family court as it was in the best position to determine the credibility of the witnesses because the testimony on this issue was so divergent. *Id.*, 440 S.E.2d at 885–86.

In the present case, Wife testified she was a social drinker and she and Husband drank socially together during the

marriage. She acknowledged that on one occasion she had too much to drink before Stepdaughter's sorority party and embarrassed Stepdaughter with her behavior. She indicated Husband had never really suggested to her she needed treatment for a problem with alcohol, but he had complained about a lot of things, including drinking.

Wife also testified she had developed a lot of health problems since Daughter's birth, and she took several prescription medications for conditions including hypertension, depression, chronic obstruction pulmonary disease, and skin problems. She testified she had several cancers removed the year of the trial.

Stepson testified that growing up there was always drinking in the house, but that neither Husband nor Wife's behavior concerned him. He testified Husband and Wife drank about the same amount, a few beers. He testified that when he went away to college and returned to visit, Wife had a tendency to get drunk at home and also drank excessively when they were out in public. Stepson acknowledged that around the time when Husband and Wife separated, he had not spent much time at the marital home and did not know the details of their day-to-day life.

Husband testified Wife's drinking had been a problem since 1998. He stated Wife drank six to ten beers a day combined with prescription medication and acknowledged she had a drinking problem. He believed Wife's drunkenness was the primary cause for the breakdown of their marriage.

Stepdaughter testified that before she moved out of the home to attend college, she did not want to be at home because of Wife's drinking. She indicated that at times, Wife became intoxicated when they were away from home and embarrassed her. She also testified Wife often passed out at night and would be drunk when the family went out to dinner. Stepdaughter further stated that in 2002 she "made a move in her personal life to move [Wife] out of [her] life to a certain extent" but continued to see Wife at family functions until the parties separated.

The family court found neither Stepson nor Stepdaughter could provide any information to the court concerning eyewitness accounts of Wife's drinking habit within one year prior to

the parties' separation. The court found "[n]either was aware of the extent of [Wife's] drinking habit at that time." The court noted Wife admitted she consumed beer while taking prescription medications and taking multiple prescriptions at a time. Although the court had "concerns about [Wife's] combining alcohol with prescription medications," it determined Husband's "evidence does not meet the level of proof necessary to establish habitual drunkenness." The court found Wife was the one who moved out of the residence and filed the action. Further, the court noted Wife took Daughter, who was fourteen years old at the time, with no objection by Husband, and Husband agreed to Wife having sole custody. Also, it found Husband had shown little concern for Wife's ability to care for Daughter because he had not seen Daughter for three months until the night before the hearing.

The family court determined testimony was presented that both parties drank, at times together, and Husband admitted he drank on a daily basis. The family court further found Husband conceded that over the course of the marriage, Wife completed her bachelor's and master's degrees, received her certification or license, stayed at home with his children and Daughter, and cared for her ailing father. The court also noted Husband's contention that Wife was not entitled to alimony and was capable of earning a good salary was inconsistent with his claim that she has a drinking problem of such a serious degree that it rises to the level of habitual drunkenness and led to the breakdown of the marriage. The court found Husband presented no evidence Wife ever attended any facility or meeting in regards to her alleged drinking problem or that she had any difficulty with her current employment. The court found the testimony of Husband and his children was less credible than that of Wife on the issue.

Much like *Epperly*, the parties presented conflicting evidence as to how much Wife drank and if it was a problem. Although both Husband's son and daughter testified Wife drank too much, neither was around the parties often in the year prior to the parties' separation. Because the family court was in the better position to see the witnesses and judge their credibility, we defer to its determinations on credibility. Accordingly, we affirm the family court's finding Husband did not meet his burden of proof.

## B. Alimony

■ Husband contends the family court erred in its determination of alimony. We disagree.

■ The amount to be awarded for alimony, as well as a determination of whether a spouse is entitled to alimony, is within the sound discretion of the family court. *Smith v. Smith*, 264 S.C. 624, 628, 216 S.E.2d 541, 543 (1975). An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings without evidentiary support. *Degenhart v. Burriss*, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct.App.2004).

■ The purpose of alimony is to place the supported spouse, as close as is practical, in the same position of support as during the marriage. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988). If the claim for alimony is well-founded, the family court has the duty of making "an alimony award that is fit, equitable, and just." *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App. 2001). The family court should consider the following factors in awarding alimony:

(1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.

*Davis v. Davis*, 372 S.C. 64, 79–80, 641 S.E.2d 446, 454 (Ct.App.2006) (citing S.C.Code Ann. § 20–3–130(C) (Supp. 2009)). The South Carolina Supreme Court has held "[t]hree important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of the supporting spouse to pay; and (3) whether either spouse was more at fault than the other." *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004). In making an alimony award, "[n]o one factor is

dispositive." *Pirri v. Pirri,* 369 S.C. 258, 267, 631 S.E.2d 279, 284 (Ct.App.2006).

Further, alimony is intended to be neither a reward nor a punishment. *Kane v. Kane,* 280 S.C. 479, 484, 313 S.E.2d 327, 330 (Ct.App.1984). "Marital fault is only one of the factors the family court must consider in making an award of alimony." *Gilfillin v. Gilfillin,* 334 S.C. 213, 222, 512 S.E.2d 534, 538 (Ct.App.1999), *rev'd on other grounds,* 344 S.C. 407, 544 S.E.2d 829 (2001). South Carolina courts have awarded spouses alimony in spite of the fact that they had fault in the breakup of their marriages. *See Lee v. Lee,* 282 S.C. 76, 79–80, 316 S.E.2d 435, 437–38 (Ct.App.1984) (affirming the award of alimony to wife of $150 per month for six months when her habitual drunkenness caused the breakup of the marriage and she was able to work); *see also Murray v. Murray,* 271 S.C. 62, 64, 244 S.E.2d 538, 539 (1978) (affirming the family court's award of alimony of $400 per month for six months when wife's conduct caused the disintegration of the marriage and she was able to work).

The family court considered the following factors when making its decision: (1) the parties were in a long-term marriage lasting nineteen years; (2) they were thirty-five years old when they married and fifty-four at the final hearing; (3) Husband was the primary wage earner and was the one responsible for the payment of the majority of the marital bills and the creation and operation of several businesses; (4) Wife quit her job and relocated to South Carolina from Georgia when they married; (5) Wife was the primary caretaker of the parties' child and Husband's children; (6) Husband has the greater earning potential even though he lacks a four-year college degree; (7) although Wife earned her bachelor's and master's degrees during the marriage, she only began her career as a counselor around the time the parties separated; (8) Wife's projected gross monthly income is $2,500, while Husband's gross monthly income is $11,027; (9) Wife has several medical problems; (10) testimony was presented that both parties drank on a regular or daily basis and at times, together; (11) no misconduct occurred that affected the economic conditions of the parties; (12) Wife was granted custody of Daughter and there are no other support obligations; and (13) Wife will have the additional expense of

health insurance because she will no longer be able to be on Husband's policy. The family court found Husband's argument that Wife had nonmarital funds available to her uncompelling, finding both parties have nonmarital assets and although Wife has more than Husband, she also has nonmarital debt and he does not.

Husband seems to take issue with the family court's weighing of the factors and wants us to reweigh them. However, that is not this court's role in the determination of alimony. We look to see if the family court abused its discretion. The family court made findings of fact on all of the relevant factors, and the record contains evidence to support each of those findings. Accordingly, the family court did not abuse its discretion in awarding alimony or in determining the amount of alimony. Therefore, the family court's award of alimony is affirmed.

### C. Equitable Distribution

Husband argues the family court erred in its apportionment of the marital estate. We disagree.

"An appellate court should approach an equitable division award with a presumption that the family court acted within its broad discretion." *Dawkins v. Dawkins,* 386 S.C. 169, 172, 687 S.E.2d 52, 54 (2010). The division of marital property is within the family court's discretion and will not be disturbed on appeal absent an abuse of that discretion. *Craig v. Craig,* 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005). The appellate court looks to the overall fairness of the apportionment. *Deidun v. Deidun,* 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004). If the end result is equitable, the fact that the appellate court would have arrived at a different apportionment is irrelevant. *Id.*

Marital property includes all real and personal property the parties acquired during the marriage and owned as of the date of filing or commencement of marital litigation. S.C.Code Ann. § 20–3–630(A) (Supp.2009). "The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership." *Mallett v. Mallett,* 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct.App.1996). "Upon dissolution of the marriage, property acquired during

the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title." *Id.* The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership. *Johnson,* 296 S.C. at 298, 372 S.E.2d at 112.

In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to all of the following factors: (1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for each or either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home as part of equitable distribution or the right to live therein for reasonable periods to the spouse having custody of any children; (11) the tax consequences to each or either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances upon the marital property and any other existing debts; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) such other relevant factors as the trial court shall expressly enumerate in its order. S.C.Code § 20-3-620(B) (Supp.2009). These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. *Johnson,* 296

S.C. at 297, 372 S.E.2d at 112. The family court has the discretion to decide what weight to assign various factors. *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). The factors are only equities to be considered in reaching a fair distribution of marital property. *Johnson*, 296 S.C. at 297–98, 372 S.E.2d at 112.

## 1. Preservation

 Husband argues the family court did not consider the tax consequences to him when making the distribution. He also contends he requested several credits against the marital home and the family court did not address the issue. We find these issues unpreserved for our review.

 When the family court does not rule on an issue presented to it, the issue must be raised by a post-trial motion to be preserved for appeal. *See Feldman v. Feldman*, 380 S.C. 538, 545, 670 S.E.2d 669, 672 (Ct.App.2008) (finding an issue unpreserved because husband failed to make a Rule 59(e), SCRCP, motion when family court failed to rule on it). Because Husband failed to raise these issues in a Rule 59(e) motion, they are unpreserved for our review.[1] *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) (holding issues must be raised to and ruled upon to be preserved for appellate review).

## 2. Ford Explorer

 Specifically, Husband contends the family court improperly included a Ford Explorer as Husband's nonmarital

---

1. Husband did raise these issues in a motion for a new trial pursuant to Rule 60(b)(3), SCRCP, asserting he was entitled to a new trial because of "mistakes of the [family] court, which may have been based wholly or partially upon [Wife's] fraud and misrepresentation." Any alleged fraud by Wife would have no impact on the family court's failure to rule on these issues. Therefore, a 59(e) motion would have been the proper vehicle for raising the family court's failure to rule on those issues. *See Noisette v. Ismail*, 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (finding when a trial court fails to address the specific argument raised by the appellant, the appellant must make a motion to alter or amend pursuant to Rule 59(e), SCRCP, to obtain a ruling on the argument or matter is not preserved for appellate review); *see also Doe v. Doe*, 370 S.C. 206, 212, 634 S.E.2d 51, 55 (Ct.App.2006) ("[W]hen an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion, the issue is not preserved for appellate review.").

property. He argues the asset was purchased after filing and thus it could have no value at the date of filing. We disagree.

Husband testified he was not sure what funds he used to purchase the vehicle. Wife testified she only learned of the vehicle accidently and then Husband testified about it at his deposition. Although Husband testified he bought the car after the date of filing, the family court found as to that asset, Wife's evidence was credible and the vehicle was an asset not disclosed by Husband. Accordingly, as this was a matter of credibility, we find the family court did not abuse its discretion.

### 3. Survey Technology, Inc.

 Husband also claims the family court erred in finding his interest in Survey Technology, Inc. was marital property. We disagree.

The family court found that when the parties married, Husband owned shares in Sur–Tech. In May 1995, Articles of Incorporation were filed for Survey Technology. In January 1996, Articles of Dissolution were filed, dissolving Sur–Tech. In 2004, Husband's current employer bought Survey Technology and Husband received eighty-six percent of the proceeds, $118,000, which was placed in a money market account. Husband testified at trial Survey Technology was the surviving entity in a merger with Sur–Tech. Husband contends that because he owned an interest in Sur–Tech prior to the marriage, a portion of the proceeds from the sale of Survey Technology were nonmarital. The family court found neither Husband nor his expert witness could provide "a value of Sur–Tech on the date the [p]arties married or when it was dissolved or merged into Survey Technology. Furthermore, no testimony or evidence was presented [Husband's] stock in Sur–Tech was of any value whatsoever at the date of marriage or when the business was dissolved or merged." The court found Husband

arbitrarily assigned a percentage value to the money market account based on the number of years he had an interest in Sur–Tech prior to the marriage. Without a value assessed to the stock at the date of marriage, the [c]ourt will not speculate as to the value of any claimed non-marital compo-

nent. Both parties identify the money market account as a marital asset, and the [c]ourt so finds and determines that [Husband] is not entitled to a non-marital component.

Wife asserts Husband did not provide any proof the Articles of Merger were filed with the Secretary of State; instead, the only evidence was the Articles of Dissolution. *See* S.C.Code Ann. § 33–11–105 (2006) ("After a plan of merger ... is approved ... the surviving or acquiring entity shall deliver to the Secretary of State for filing articles of merger.... A merger ... takes effect upon the effective date of the articles of merger...."). Therefore, Wife contends Survey Technology was a new entity created after the parties married and thus, Husband's interest in it was marital property. Because Survey Technology was incorporated during the marriage and Husband provided Articles of Dissolution instead of Articles of Merger, the record contains evidence to support the family court's finding the funds were marital.

### 4. Lease Payments

 Husband also contends the family court improperly valued Survey Leasing, Inc. by engaging in "double dipping." He asserts the family court improperly included lease payments from Survey Leasing in his income when calculating temporary alimony and child support. We disagree.

At trial, Husband's expert asserted the lease payments should not be classified both as income and as property subject to equitable division. Husband requested that the full temporary alimony payments be deducted from the value of the lease payments. However, the family court found the lease payment income was only a part of the income the family court used in calculating temporary alimony and child support. The court further found the evidence confirmed Wife's contention Husband vastly under-reported his income at the temporary hearing and thus should not be allowed to benefit from his misrepresentations. At the temporary hearing, Husband represented his 2005 salary was $65,000 or $73,000 per year, but at the final hearing, he admitted his 2005 W–2 reflected annual wages of $111,177. The family court found Husband had unclean hands and would not reward his misrepresentations by a downward adjustment equal to the value of the

lease payments. Wife notes the salary Husband admitted at trial is virtually identical to the salary the family court used to calculate his temporary alimony and child support.

In *Buckley v. Shealy,* 370 S.C. 317, 324–25, 635 S.E.2d 76, 79–80 (2006), the family court gave Husband an equitable set-off for "overpayments" of child support husband made for six years despite the fact that he failed to make timely child support payments for almost thirteen years. The supreme court found husband was not entitled to an equitable setoff because of his own misdeeds in dealing with wife and the court and reversed the family court's decision awarding husband a set-off. *Id.* at 325, 635 S.E.2d at 80.

Here, if family court had not included the lease payments as martial property, Husband would have been rewarded for his dishonesty about his income. Further, because Husband's correct income is basically the same as the lesser income he provided for the temporary payments with the lease payments added to it, we find no prejudice to Husband. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter."). Accordingly, the family court did not abuse its discretion in including the lease payments as marital property.

### 5. Overall Distribution

 Husband seems to disagree with the family court's findings as to several of the relevant factors. Much of his argument seems to be taking issue with the family court's findings but many of those findings relate to witness credibility. Additionally, Husband seeks to assign weight to the factors differently than the family court did in determining the equitable distribution. Because the record includes evidence to support those findings, the family court did not abuse its discretion.

Furthermore, the overall distribution of the estate appears fair. Although Husband did bring more money into the marriage through his salary, Wife contributed to the marriage by being a stay-at-home mom to the parties' child and Husband's two children that lived with them. Although Husband presented some testimony Wife did not contribute much to the

household, Wife's testimony was to the contrary. Accordingly, we affirm the family court's equitable distribution.

### D. Attorney's Fees

Finally, Husband maintains the family court erred in awarding Wife attorney's fees. He also contends the issue should be reversed and remanded. We disagree.

The family court has discretion in deciding whether to award attorney's fees, and its decision will not be overturned absent an abuse of discretion. *Donahue v. Donahue*, 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings lacking evidentiary support. *Degenhart*, 360 S.C. at 500, 602 S.E.2d at 97. In deciding whether to award attorney's fees, the family court should consider (1) each party's ability to pay his or her own fee, (2) the beneficial results obtained by the attorney, (3) the parties' respective financial conditions, and (4) the effect of the fee on each party's standard of living. *Patel*, 359 S.C. at 533, 599 S.E.2d at 123. In determining reasonable attorney's fees, the six factors the family court should consider are "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

This court has previously held when parties fail to cooperate and their behavior prolongs proceedings, this is a basis for holding them responsible for attorney's fees. *Anderson v. Tolbert*, 322 S.C. 543, 549–50, 473 S.E.2d 456, 459–60 (Ct.App. 1996); *see also Donahue*, 299 S.C. at 365, 384 S.E.2d at 748 (holding husband's "lack of cooperation ... serves as an additional basis for the award of attorney['s] fees"); *Johnson*, 296 S.C. at 304, 372 S.E.2d at 115 (citing husband's lack of cooperation in discovery as a basis for increasing wife's attorney fee award on appeal). "An adversary spouse should not be rewarded for such conduct." *Anderson*, 322 S.C. at 549, 473 S.E.2d at 459.

In determining if attorney's fees were appropriate, the family court stated it considered each party's ability to pay the attorney's fees, their respective financial conditions, the beneficial results obtained by his or her attorney, and the effect of the fee on each party's standard of living. The court found Husband was "in far better financial condition to pay [Wife's] attorney's fees than she is based upon their respective incomes and the effect on their standard of living." "Additionally, the [c]ourt considered the beneficial results obtained by [Wife's] attorney in regards to the ground for divorce, alimony, equitable division, and pursuit of asset and income information that was made more difficult due to the conduct of [Husband]." Therefore, the family court found the overall results were more beneficial to Wife.

Once the family court determined an award was appropriate, the court considered the factors in *Glasscock* as to the amount of the award. The court found the extent of services, difficulty, and time invested to the case were all substantial in that discovery and pursuit of financial information were major issues in the case. The family court found Wife's counsel was experienced in family law and her rates were well within those customarily charged. As of the date of trial, the family court found Wife had incurred over $20,000 in attorney's fees and costs. Accordingly, the family court found an award of $15,000 to Wife for attorney's fees was reasonable.

The family court considered all of the appropriate factors and stated how those factors supported awarding Wife attorney's fees. The record contains evidence to support each of the family court's findings. Wife prevailed on most of the issues, and Husband has the ability to pay the fees. On appeal, Husband admits Wife prevailed on nearly every issue and relies on his other assertions of error in support of his argument—the family court erred in not granting him a divorce based on Wife's habitual drunkenness, its equitable distribution, and its award of alimony. Because we do not find that the family court erred in those determinations, Wife did in fact receive beneficial results. Husband also admits Wife's counsel has a good reputation and has hourly rates consistent with lawyers in the area she practices. Because the evidence in the record supports the family court's findings as to attor-

ney's fees, it did not abuse its discretion in awarding attorney's fees and calculating the amount.

## II. WIFE'S APPEAL

### A. Credit for Equity in the Marital Residence

Wife argues the family court erred in giving Husband a credit against the equity in the marital home because he paid the down payment as the funds were transmuted into marital property. We disagree.

> The spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital es[t]ate. If she carries this burden, she establishes a prima facie case that the property is marital property.

> If the opposing spouse then wishes to claim that the property so identified is not part of the marital estate, he has the burden of presenting evidence to establish its nonmarital character.

*Johnson,* 296 S.C. at 294, 372 S.E.2d at 110 (citation omitted).

The spouse claiming nonmarital property has been transmuted to marital property must produce objective evidence showing the parties themselves regarded the property as the common property of the marriage during the marriage. *Id.* at 295, 372 S.E.2d at 110–11. Evidence of transmutation includes jointly titling the property, using the property exclusively for marital purposes, commingling the property with marital property so that it becomes untraceable, or using marital funds to build equity in the property. *Id.* "The mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation." *Johnson,* 296 S.C. at 295–96, 372 S.E.2d at 111. Whether separate property has been transmuted into marital property is a matter of intent to be gleaned from the facts of each case. *Simpson v. Simpson,* 377 S.C. 527, 538, 660 S.E.2d 278, 284 (Ct.App.2008).

In *Greene v. Greene,* 351 S.C. 329, 337, 569 S.E.2d 393, 398 (Ct.App.2002), wife borrowed $10,000 from her father to make a down payment on property. "Although the family court

'recognized a contribution on [wife's] behalf in the amount of $10,000 in the overall equitable division of the marital estate,' the family court nonetheless included the full equitable value of [the property] in valuing the marital estate for equitable distribution." *Id.* This court found the $10,000 was wife's separate property and modified the family court's order to subtract $10,000 from the assigned value of the property for purposes of equitable distribution. *Id.*

Also in *Greene,* the family court found $20,000 of the equity in a $50,500 property attributable to wife's contribution of premarital funds as a down payment on the property and assigned the property a value of $30,500 for purposes of equitable distribution. *Id.* at 341, 569 S.E.2d at 400. However, the court awarded the property to husband with a value of $30,500, giving wife the option of retaining the property by paying husband $30,500. *Id.* This court found wife was entitled to a $20,000 credit for her nonmarital contribution toward the acquisition of the property. *Id.*

Wife initially testified she could not remember who made the down payment on the marital home. Wife later testified that both she and Husband contributed the down payment but she could not remember how much each contributed and Husband could have contributed "a good bit more." On cross-examination, Wife testified that the money she put towards the home would have come from the sale of her home and her salary. She also acknowledged that when she sold her home in Georgia, she had two mortgages on it and she was behind on the payments for a condominium she owned. Husband testified because he alone contributed the funds for down payment of the home, it was titled solely in his name. He also testified that Wife used any money she received from the sale of her home in Georgia to pay towards the arrears on her condominium.

The family court found in light of Husband's testimony and evidence of the proceeds of the sale of his premarital home and other funds he had at the time and Wife's testimony as to the proceeds from her home and the debt on her condominium, Husband was more credible on the issue. We defer to the family court as to who contributed the down payment because it is a matter of credibility. Much like Wife in *Greene,* here,

Husband contributed the down payment to purchase property that was marital property. Accordingly, we affirm the family court's awarding Husband the $81,707 credit.

## B. Georgetown Property

██ Wife argues the family court erred in failing to include the entire value of the Georgetown Property in the marital estate because the Husband used marital funds to purchase the property, which violated the family court's temporary order. We find this issue is unpreserved for our review.

"An issue may not be raised for the first time on appeal. In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court." *In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004). Although at trial Wife argued Husband should be found in contempt for dissipating the asset, she never argued she was entitled to special equity in the Georgetown Property. In Wife's testimony, she states that Husband paid $250,000 for the property although clearly only $157,623 was taken from the money market account. In the order, the family court reinstates the money market value to what it was before Husband removed the money. Additionally, the court lists the Georgetown Property as a marital asset and sets its adjusted value at $82,718.

In Wife's 59(e) motion she contends "the [family] [c]ourt erred in issuing its judgment . . . [b]y finding the Georgetown [P]roperty purchased by [Husband] had an adjusted value of $82,718." In the final order, the family court found the net value of $250,000 was adjusted for the $167,282 reinstated value of the money market account that Husband used to purchase the Georgetown Property. The family court set that adjusted value at $82,718. However, Husband used $156,644 from the money market account, not the entire account. Therefore, the adjusted value should have been $92,377. Because Wife's argument in her 59(e) motion is unclear and unspecific, we cannot discern exactly what she is arguing. Seemingly, she is referring to this incorrect figure and not requesting a special equity. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003) ("A party need not use the exact name of a legal doctrine in order to preserve it, but

it must be clear that the argument has been presented on that ground."). Further, any request at the 59(e) stage of the proceedings was untimely because Wife could have raised it at trial. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("[A]n issue may not be raised for the first time in a post-trial motion."). Accordingly, we find this issue is unpreserved for our review.

### C. Life Insurance Stipulation

 Wife argues the family court erred in determining her life insurance policy was marital property because the parties stipulated it was not marital property. We agree.

 "A stipulation is an agreement, admission, or concession made in judicial proceedings by the parties or their attorneys and is binding upon those who make them. The court must accept stipulations as binding upon the parties." *McCrea v. City of Georgetown*, 384 S.C. 328, 332, 681 S.E.2d 918, 921 (Ct.App.2009) (citation omitted). In his brief, Husband states he agreed at trial that the policy was Wife's nonmarital asset and his forensic accountant testified to the same. Accordingly, the family court erred in including the $804 life insurance policy as marital property in the equitable division.

### CONCLUSION

The family court did not err in failing to grant Husband a divorce on the ground of habitual drunkenness, in its award of alimony and attorney's fees, or in its overall equitable distribution. However, the family court erred in determining Wife's life insurance policy was a marital asset when the parties stipulated it was not. Accordingly, the family court's decision is

**AFFIRMED AS MODIFIED.**

SHORT and THOMAS, JJ., concur.