741 S.E.2d 558

**Margaret Anne CURRY, Respondent,**

v.

**Allen T. CURRY, Appellant.**

**Appellate Case No. 2011–198030.**

**No. 5085.**

Court of Appeals of South Carolina.

Heard Jan. 9, 2013.

Decided Feb. 20, 2013.

490

Paul E. Tinkler and Taylor Elizabeth Long, both of the Law Office of Paul Tinkler, of Charleston, for Appellant.

Anne Frances Bleecker, of The Bleecker Law Firm, LLC, of Charleston, and Dana Rachel Wine, of The Wine Law Firm, LLC, of Mt. Pleasant, for Respondent.

CURETON, A.J.

Husband appeals the family court's order granting the parties a divorce and equitably dividing marital property. He argues the family court erred in (1) giving him an insufficient credit for contributing nonmarital property and (2) finding his use of alcohol constituted habitual intoxication. We affirm but modify the family court's order as discussed below.

**FACTS**

Husband and Wife married in 1978. The marriage produced two children, both of whom were emancipated by the end of June 2000. In 1993, Husband acquired from his mother a waterfront lot (Lot 34) on which the parties subsequently constructed the marital home, a swimming pool, and a dock. In exchange for the title to the lot, Husband disclaimed any future inheritance from his mother. Prior to the construction of the home, Husband conveyed a one-half interest in the lot to Wife.

Wife left the marital home on Labor Day weekend in 2010. On October 4, 2010, she filed an action seeking a divorce on the ground of Husband's habitual intoxication. Husband answered, denying fault, alleging Wife's drinking contributed to the breakdown of the marriage, and seeking an order of separation.

Following a failed mediation in November 2010, on April 8, 2011, the parties participated in an arbitration that resulted in an agreement settling, among other issues, alimony and the division of personal property. The remaining issues were tried before the family court.

**I. Trial Testimony**

At trial, Wife testified the parties had "struggled for years to try to make the marriage work," but it fell apart because Husband drank alcohol to excess and became loud, rude, and verbally abusive when he drank. In addition, she believed Husband's drinking enhanced his lack of respect for her and her contributions.

In general, Wife described Husband as behaving worse with every drink and going to bed drunk at 8:00 p.m. each night. Nevertheless, he woke up "bright and cheery" between 6:30

and 7:00 each morning and served Wife toast and coffee in bed until she moved to a different bedroom. According to Wife, Husband's drinking increased on the weekends, when he would begin drinking around noon or 1:00 p.m. However, she conceded Husband's drinking did not prevent him from getting up and preparing her coffee and toast each morning, participating in housework, and earning an income that supported their comfortable lifestyle.

Although Wife admitted drinking cocktails, she denied drinking to excess. She rated Husband's drinking at nine on a ten-point scale and her own at either four or five. She recalled Husband stopped drinking after she told him she was considering divorce, but he began again approximately two weeks later. She stated she had suggested Husband needed professional help to overcome his alcohol problem, but he refused. Wife noted neither Husband's bout with prostate cancer nor Husband's drinking benefited their sexual relationship.

With regard to Lot 34, Wife testified the property was first titled only in Husband's name. She recalled telling him it would need to be in her name as well, "not only because [they] always owned everything jointly, [but also because they] were going to need [her] income" to qualify for a $200,000 construction loan. Shortly thereafter, Husband deeded Wife an undivided one-half ownership in the lot. Wife believed Husband intended that they own the property jointly. Additionally, Wife testified she was the financial manager of the marital partnership.

Wife also presented the testimony of her sisters, her brother-in-law, and a family friend, who supported her claim that Husband became mean and insulting toward her when he drank. Each witness described at least one event when Husband's intoxication led him to behave erratically or unusually. Although they acknowledged Wife occasionally drank alcoholic beverages, they testified she rarely became intoxicated.

Husband testified that as a financial consultant, he had handled investments for many family members, as well as institutional investors. In addition to work, Husband described supporting Wife's employment decisions, caring for

her after her foot surgeries, serving her breakfast daily, and sharing in household chores.

Husband admitted drinking alcohol to excess at times and admitted doing so seven days a week just before Wife left. In his own estimation, he consumed a little more alcohol than Wife: if his consumption were nine on a ten-point scale, he stated Wife's "would have to be a seven or eight." He stated he had "absolutely" seen Wife intoxicated and that she had missed work at a former job because of her overindulgence. Husband believed both parties' drinking had "put pressure" on their familial relationships. Although he believed his own drinking significantly affected the marital relationship, he also believed the breakdown of Wife's relationship with his mother also caused "discomfort." [1]

Husband recalled two conversations with Wife concerning alcohol's impact on their lives and their marriage counselor's recommendation that they "examine [it] closely." He admitted his attempt to quit lasted only a week but stated, "you know, have a glass of wine and all of a sudden everybody is drinking again," including Wife. Husband testified he "might have [had] two, three, four drinks" of two to three ounces of Scotch daily. At the time of trial, he stated he had decreased his intake of alcohol and no longer drank to excess, but he had never entered a treatment program.

Husband stated the parties had approximately $900,000 in equity in the marital home and land. He believed the value of the house accounted for one third of the equity, with the land holding the remaining value. He reasoned Wife was entitled to half the equity in the house alone, while he was entitled to the other half, plus the full value of the equity in the land beneath it. As a result, Husband concluded Wife was entitled to one sixth of the value of the parties' equity in the marital home, and he should have the rest. However, he conceded advising Wife at one point that she should not leave him yet, because when the marital home appreciated in value, she

---

1. Wife, who had previously been very close to Husband's mother, distanced herself from her mother-in-law after a disagreement about how the parties should handle their daughter's wedding. This disagreement occurred approximately three years before trial.

would likely receive more than the $400,000 to which she was then entitled.

Husband also presented the testimony of General Charles Barnhill, Jr., an expert real estate appraiser. General Barnhill testified the fair market value of the marital home was $1,300,000, with the lot alone representing $850,000 of that amount.

## II. Documentary Evidence

The parties submitted copies of various financial records, the deeds and disclaimer to which they referred in their testimony, and the mortgages encumbering the marital home. In addition, they provided copies of documents showing the values of Lot 34 and the marital home in 1994—a tax assessment valuing Lot 34 at $127,000 and an appraisal report valuing the land at $200,000 and the home and land together at $425,000. The parties also submitted an appraisal report valuing Lot 34 and the marital home in 2010. The appraiser arrived at values of $850,000 for Lot 34 alone and $1,225,000 for the home and lot.

## III. Final and Amended Final Orders

On June 7, 2011, the family court entered its final order. It recited and incorporated the parties' arbitration agreement as part of the order. With regard to fault, the family court found Husband admitted habitually "drinking three or more alcoholic drinks of two to three ounces" daily at the time the parties separated. According to the family court, Wife and four other witnesses had testified Husband's frequent intoxication impaired and damaged both the marriage and the parties' interactions with others outside the home. By contrast, Husband presented no testimony supporting his contentions about Wife's drinking. The family court concluded, "Husband's habitual drinking led to the breakdown of the marital relationship."

The family court accepted the parties' stipulation that the marital home was marital property valued at $1,300,000 and awarded Husband possession of it. The family court reviewed South Carolina law allowing for "special consideration" of inherited property or property exchanged for inherited prop-

erty at the time of equitable division. In evaluating the statutory factors for equitable distribution, the family court found significant the fact that "Husband's contribution of the lot was from a gift and a waiver of his right to further inheritance from his father's estate." The family court awarded Husband a fifty-five-percent interest in the parties' equity in the marital home and Wife, a forty-five-percent interest. The family court based its decision upon an analysis of the statutory factors, including Husband's fault, both parties' contributions to the marriage, Husband's superior income and educational credentials, and the parties' individual retirement accounts.

In view of its decision concerning apportionment, and allowing for advances Wife had already received from marital assets, the family court required Husband to pay Wife $285,698.42 "to effect a fifty[-]percent distribution of the parties' non-real estate marital assets." In addition, it ordered Husband to pay approximately half of Wife's attorney's fees.

## IV. Rule 59(e) Motion

Husband filed a motion to alter or amend, seeking a greater credit for his contribution of nonmarital property and clarification of particular aspects of the overall apportionment award, and requesting the family court make findings of fact supporting the award of attorney's fees to Wife.

On July 18, 2011, the family court heard arguments on the motion. Husband pointed to testimony valuing Lot 34 at between $120,000 and $200,000 at the time he deeded a half-interest in it to Wife. Furthermore, he contended the lot had undergone passive appreciation during the marriage, arriving at a value of $850,000, with the house valued at an additional $400,000 at the time of commencement of litigation. According to Husband, prior cases suggested the family court should have been "more liberal in giving him credit for that original contribution." In addition, Husband asked the family court to clarify whether it intended, as portions of the final order stated, to divide the equity in the marital home fifty-five/forty-five but the overall marital estate fifty/fifty. Wife joined in Husband's request for clarification but maintained the family

court had correctly apportioned the equity in the marital home.

On August 4, 2011, the family court entered an amended final order. Although the amended final order included additional findings of fact and some minor modifications, the family court did not disturb its findings concerning Husband's fault or the apportionment and division of property. This appeal followed.

## STANDARD OF REVIEW

"In appeals from the family court, [appellate courts] review[ ] factual and legal issues de novo." *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "[W]hile retaining the authority to make our own findings of fact, we recognize the superior position of the family court judge in making credibility determinations." *Lewis v. Lewis*, 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). The burden is upon the appellant to convince the appellate court that the preponderance of the evidence is against the family court's findings. *Id.* "Stated differently, *de novo* review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court." *Id.* at 388–89, 709 S.E.2d at 654.

However, appellate courts, in reviewing the equitable division of marital property, look at the overall apportionment for fairness. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988) (citing *Morris v. Morris*, 295 S.C. 37, 39–40, 367 S.E.2d 24, 25 (1988)).

## LAW/ANALYSIS

### I. Contribution of Nonmarital Property

Husband asserts the family court erred in giving him insufficient credit for his contribution of nonmarital property.[2] We agree in part.

Our supreme court has recognized "a transmutation of inherited nonmarital property into marital property [does] not extinguish the inheritor's right for special consideration upon

---

2. While Husband concedes Wife is entitled to fifty percent of the non-real estate portion of the marital estate, he claims he is entitled to more than seventy-five percent of the equity in the marital home.

divorce." *Dawkins v. Dawkins,* 386 S.C. 169, 173, 687 S.E.2d 52, 54 (2010), *abrogated on other grounds by Lewis v. Lewis,* 392 S.C. 381, 709 S.E.2d 650 (2011) (citation omitted). Furthermore, our supreme court held that "the correct way to treat [an] inheritance is as a contribution by [the inheriting party] to the acquisition of marital property [and that] [t]his contribution should be taken into account in determining the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution." *Id.* at 173–74, 687 S.E.2d at 54 (alterations in original) (quoting *Toler v. Toler,* 292 S.C. 374, 380 n. 1, 356 S.E.2d 429, 432 n. 1 (Ct.App.1987)).

■ We affirm, but modify the family court's order to award Husband a fifty-five-percent share, and Wife a forty-five-percent share, of the entire marital estate, not just the equity in the marital home. In his argument before the family court and on appeal, Husband conceded the property had been transmuted and the marital home was marital property. The family court properly analyzed this issue by determining Husband's contribution of the land on which the parties constructed their home deserved special consideration. *See id.* (confirming the inheriting party's contribution of inherited property that is later transmuted "should be taken into account in determining the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution"). The evidence reflects that when Husband received title to Lot 34 from his mother in 1993, the lot was appraised at $200,000. Within one month, Husband contributed Lot 34 to the marital estate by transferring half of his ownership interest to Wife. Giving Husband the benefit of the doubt, the value of his contribution at that time was approximately $200,000.

The lot remained marital property, jointly owned by Husband and Wife, from the time of Husband's contribution until the filing of the divorce action. During that period of approximately seventeen years, the lot passively appreciated to a value of $850,000. We find each party is entitled to share in the passive appreciation in value that occurred while the lot was a part of the marital estate.

■ Next, the family court evaluated and apportioned the equity in the marital home to reflect the quality of Husband's

contribution. *See* S.C.Code Ann. § 20–3–620(B) (Supp.2012) (stating when a party has contributed to "the acquisition, preservation, depreciation, or appreciation in value of the marital property," the family court "shall consider the quality of the contribution as well as its factual existence"). Having found Husband contributed Lot 34 and having determined the value of that contribution, the family court proceeded to weigh the value of Husband's contribution in its consideration of the fifteen statutory factors for equitable apportionment. *See Dawkins*, 386 S.C. at 173–74, 687 S.E.2d at 54 (confirming the inheriting party's contribution of inherited property that is later transmuted "should be taken into account in determining the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution"); *accord Barrow v. Barrow*, 394 S.C. 603, 614, 716 S.E.2d 302, 308 (Ct.App. 2011).

In complaining the family court's division does not fairly represent the value of his contributions, Husband appears to ignore the family court's findings concerning the remaining factors, including his fault in the breakdown of the marriage. Findings that militated in favor of reducing Husband's share of the equity include (1) Wife established that the marriage failed due to Husband's habitual drunkenness, (2) Husband failed to prove Wife's consumption of alcohol rose to the level of habitual drunkenness, (3) great disparities existed between Husband's and Wife's respective educations and earning capacities, and (4) Wife was the financial manager of the marital partnership. In addition, the family court's award to Husband of the marital home required Wife to secure other lodging.

■ We find the family court properly afforded special consideration to Husband's contribution of Lot 34. While we agree with the family court's decision to award Husband a greater interest in the marital home, which constituted the bulk of the marital estate, we hold the equity in the marital home should have been included in the overall marital estate.[3] *See Dawkins*, 386 S.C. at 173–74, 687 S.E.2d at 54 (holding special consideration for the contribution of transmuted, inher-

---

3. We note the family court found Husband's contributions to the non-real estate portion of the marital estate were overwhelming when compared to Wife's contributions.

ited property affects "the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution"). Moreover, since the bulk of the marital estate was tied up in the marital home and Husband made most of the material contributions to the acquisition of the marital estate, the preponderance of the evidence reasonably supports a fifty-five/forty-five division of the entire estate. Therefore, we modify the family court's order to extend the fifty-five/forty-five apportionment to the entire marital estate.

We adopt the family court's factual findings concerning property values, which indicate the marital estate consists of $907,889.01 in equity in the marital home and $198,760.01 in other assets, for a total value of $1,106,649.02. We find Husband receives value of $608,656.96 for his fifty-five-percent share. We further find Wife receives value of $497,992.06 for her forty-five-percent share. Adhering to the family court's distribution of non-real estate assets, we find Wife received marital assets valued at $193,231.63 and advances from the marital estate valued at $29,000. Accordingly, to complete the equitable division of the marital estate, Husband shall pay Wife $275,760.43 within one hundred twenty (120) days from the date this opinion is filed.

## II. Habitual Intoxication

Husband asserts, and we agree, the family court erred in stating it could grant a divorce based upon prima facie evidence of habitual intoxication. Nevertheless, we hold the preponderance of the evidence demonstrates Wife was entitled to a divorce based on habitual intoxication.

Our supreme court has held a party seeking temporary relief must make a "prima facie showing of probable cause for a divorce or separation." *Fisher v. Fisher*, 276 S.C. 375, 377, 278 S.E.2d 780, 781 (1981).

A family court may grant a divorce on the ground of habitual drunkenness. S.C.Code Ann. § 20-3-10(4) (1985).

Habitual drunkenness is the fixed habit of frequently getting drunk; it does not necessarily imply continual drunkenness. Based on this definition, one need not be an alcoholic to be guilty of habitual drunkenness. It is sufficient if the

use or abuse of alcohol causes the breakdown of normal marital relations.

*Lee v. Lee,* 282 S.C. 76, 78–79, 316 S.E.2d 435, 437 (Ct.App. 1984).

In the case at bar, the family court recited:

A divorce may be granted on the grounds of habitual drunkenness if there is a prima facie showing that the "abuse of alcohol caused the breakdown of the marriage and that such abuse existed at or near the time of the filing for divorce." *Bodkin v. Bodkin,* 388 S.C. 203, 212, 694 S.E.2d 230 (Ct.App.2010) (citing *Epperly v. Epperly,* 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994)).

Neither *Bodkin* nor *Epperly* permits the grant of a divorce based solely upon a prima facie showing of habitual drunkenness. Rather, both opinions describe the showing a party must make to establish habitual drunkenness, quoted above by the family court, but they do not discuss the requisite level of proof. *Bodkin v. Bodkin,* 388 S.C. 203, 212, 694 S.E.2d 230, 235 (Ct.App.2010); *Epperly v. Epperly,* 312 S.C. 411, 414, 440 S.E.2d 884, 885 (1994). A party may receive temporary relief upon a prima facie showing of habitual drunkenness. *Fisher,* 276 S.C. at 377, 278 S.E.2d at 781. However, a party seeking a divorce on that ground must prove it by a preponderance of the evidence. *Lee,* 282 S.C. at 79, 316 S.E.2d at 437.

We find the preponderance of the evidence supports the family court's decision. The party asserting fault must establish that the other party's "abuse of alcohol caused the breakdown of the marriage and that such abuse existed at or near the time of filing for divorce." *Bodkin,* 388 S.C. at 212, 694 S.E.2d at 235 (quoting *Epperly,* 312 S.C. at 414, 440 S.E.2d at 885). Wife testified Husband drank alcohol to excess on a regular basis during the latter part of their marriage; became loud, rude, and verbally abusive when he drank alcohol and behaved worse with every drink; routinely went to bed drunk at 8:00 p.m.; and refused to seek professional help to address his drinking. Wife also presented corroborating testimony from her two sisters, her brother-in-law, and the parties' friend. One sister stated Husband's drinking had increased during the latter portion of the marriage, and he became mean and insulting when he drank and "thought he did everything

and didn't give [Wife] much credit." Wife's brother-in-law observed Husband was especially mean and insulting toward Wife when he was drinking. Each of the four witnesses recalled at least one event when Husband's intoxication led him to behave erratically or unusually. The parties' friend testified she and her husband had limited their association with the parties during the months before Wife left, in part because they found Husband "angry and difficult to be around" when he was drinking.

Husband did not present evidence rebutting this testimony. Rather, he admitted he drank alcohol to excess seven days a week just before Wife left and stated alcohol consumption had "put pressure" on their relationship. Husband recalled discussions about alcohol consumption with both Wife and their counselor. He also admitted his attempt to stop drinking before Wife left failed after a week. His defense consisted of complaints concerning Wife's drinking and testimony that, despite his drinking, he functioned normally. In view of the record, we find the preponderance of the evidence supports the family court's finding that Husband's habitual intoxication contributed to the breakdown of the marriage.

## CONCLUSION

We find Husband received special consideration for his contribution of Lot 34 to the marital estate. However, we find the family court's equitable apportionment scheme improperly segregated the equity in the marital home from the remainder of the marital estate. Accordingly, we affirm the family court's decision but modify its award so that Husband receives a fifty-five-percent share of the entire marital estate and Wife receives a forty-five percent share.

In view of our finding that the preponderance of the evidence establishes Husband's abuse of alcohol caused the breakdown of the marriage, we find Husband suffered no prejudice from the family court's incorrect statement of the standard of proof. Accordingly, the decision of the family court is

**AFFIRMED AS MODIFIED.**

FEW, C.J., and PIEPER, J., concur.